**Steven A. Kraemer,** OSB No. 882476
E-mail:  skraemer@cisoregon.org
**David C. Lewis**, OSB No. 953348
E-mail:  dlewis@cisoregon.org
**Lauren E. Nweze**, OSB No. 145218
E-mail:  lnweze@cisoregon.org
**KRAEMER & LEWIS**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503)763-3875
Facsimile: (503) 763-3901

Of Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **TAYLOR SELF**, an individual, | No. 3:20-cv-00584-BR |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **COLUMBIA COUNTY**, an Oregon municipality, and **CAROLYN TOWNSEND**, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

## TABLE OF CONTENTS

MOTION.................................................................................................................. 1

LEGAL MEMORANDUM ..................................................................................... 2

I.    INTRODUCTION ........................................................................................... 2

II.   STATEMENT OF FACTS.............................................................................. 2

III.  SUMMARY JUDGMENT STANDARD ........................................................ 8

IV.   LEGAL MEMORANDUM.............................................................................. 9

    A.    Defendants Are Entitled to Summary Judgment on Plaintiff's Section 1983 Claim. .... 9

        1.    Defendants Are Entitled to Summary Judgment on Plaintiff's 14th Amendment Claim as Plaintiff was a Sentenced Inmate, Not a Pretrial Detainee. ...................................................................... 9

        2.    Defendant Columbia County Is Entitled to Summary Judgment on Plaintiff's Section 1983 As There Are No Allegations or Proof of *Monell* Liability........................................................................ 9

        3.    Sergeant Townsend is Entitled to Summary Judgment on Plaintiff's Section 1983 Claim........................................................ 10

            (a)   Sergeant Townsend's Housing Decision Does Not Constitute a Violation of the Eighth Amendment. ............................. 10

            (b)   Sergeant Townsend's Release Decision Does Not Constitute an Eighth Amendment Violation. ......................... 14

            (c)   Sergeant Townsend Is Entitled to Qualified Immunity on Plaintiff's Section 1983 Claim. ............................ 18

    B.    Defendants Are Entitled to Summary Judgment on Plaintiff's Infliction of Emotional Distress Claim.................................................... 20

        1.    A Claim for "Reckless Infliction of Emotion Distress" is Not a Cognizable Claim Under Oregon Law. ........................................... 20

        2.    Defendants Are Entitled to Summary Judgment on Plaintiff's Intentional Infliction of Severe Emotional Distress Claim as There Is No Genuine Issue of Material Fact as to Intent, Outrageous Conduct, or Severe Emotional Distress.............................................. 20

    C.    Defendant is Entitled to Summary Judgment on Plaintiff's Negligence Claim.......... 22

        1.    Defendants Are Entitled to Summary Judgment on Plaintiff's Negligence Claim as the Claim is Based Upon the Same Facts Giving Rise to Plaintiff's Section 1983 Claim........................................... 22

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

2.    Defendants Are Entitled to Summary Judgment on Plaintiff's Negligence Claim as There is No Genuine Issue of Material Fact on the Elements of Foreseeability, Causation, and Harm. .................................... 23

D.    Defendants Are Entitled to Summary Judgment on Plaintiff's Punitive Damages Claim. .......................................................................................................... 25

1.    Punitive Damages Are Not Available for Plaintiff's State Tort Claims or for Plaintiff's Section 1983 Claim Against Defendant Columbia County. ................ 25

2.    Sergeant Townsend is Entitled to Summary Judgment on Plaintiff's Punitive Damages Claim. ........................................................................................... 25

CONCLUSION ........................................................................................................ 26

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

# **TABLE OF AUTHORITIES**

## **Cases**

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986) ..................................................... 8

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ............................................................. 19

*Babick v. Oregon Arena Corp.*, 333 Or. 401, 40 P.3d 1059 (2002) ............................. 20

*Bahn v. NME Hosp's, Inc.*, 929 F.2d 1404, (9th Cir.), *cert. denied*, 502 U.S. 994 (1991) ............. 8

*Barringer v. Clackamas Cty.*, No. CV 09-068-AC, 2010 WL 5349206
    (D. Or. Nov. 22, 2010) ............................................................................................ 22

*Benson v. Peters*, No. 2:14-CV-00132-CL, 2018 WL 7893267 (D. Or. Dec. 6, 2018),
    *report and recommendation adopted*, No. 2:14-CV-00132-CL, 2019 WL 1446965
    (D. Or. Mar. 31, 2019) ........................................................................................... 11

*Berg v. Kincheloe*, 794 F.2d 457 (9th Cir. 1986) .......................................................... 10

*Berry v. Bunnell*, 39 F.3d 1056 (9th Cir. 1994) ............................................................ 16

*Board of Cty. Comm'rs. v. Brown*, 520 U.S. 397 (1997) ............................................... 10

*Brass v. Cty. of Los Angeles*, 328 F.3d 1192 (9th Cir. 2003) ...................................... 15

*Bryan v. Las Vegas Metro. Police Dep't*, 349 F. App'x 132 (9th Cir. 2009) ................ 25

*California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc.*, 818 F.2d 1466
    (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988) ................................................. 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................. 8

*City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S.Ct. 1765 (2015) ............. 19

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748,
    69 L. Ed. 2d 616 (1981) ......................................................................................... 25

*Daley v. McKoy*, No. 3:17-cv-00718-BR, 2018 WL 2470984 (D. Or. May 31, 2018) ............... 22

*District of Columbia v. Wesby*, 138 S.Ct. 577 (2018) .................................................. 18

*Donohue v. Vargo*, No. 2:16-CV-00788-MC, 2018 WL 3964804 (D. Or. Aug. 17, 2018),
    *aff'd*, 771 F. App'x 413 (9th Cir. 2019) .................................................................. 16

*Estelle v. Gamble*, 429 U.S. 97,  97 S.Ct. 285, 50 L.Ed.2d 251 (1976)

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

*Farmer v. Brennan*, 511 U.S. 825 (1994) .............................................................................. 10, 11

*Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1,
    734 P.2d 1326 (1987) ........................................................................................................ 23

*Felarca v. Birgeneau*, 891 F.3d 809 (9th Cir. 2018) .................................................................. 18

*Frank v. Cascade Healthcare Cmty., Inc.*, No. 6:11-cv-06402-AA,
    2013 WL 867387 (D. Or. Mar. 6, 2013) .......................................................................... 22

*Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or. 434, 760 P.2d 874 (1988) ................................. 23

*Gilliam v. Johnson*, No. 1:12-CV-01008, 2015 WL 1419346
    (W.D. Ark. Mar. 27, 2015) .......................................................................................... 15, 19

*Graham v. Multnomah Cnty.*, 158 Or. App. 106, 972 P.2d 1215 (1999) ..................................... 23

*Gregory v. City of Newberg*, No. 3:15-CV-00473-BR, 2015 WL 5577755
    (D. Or. Sept. 21, 2015) ..................................................................................................... 22

*Hadley v. City of Beaverton*, No. CV-09-022-ST, 2010 WL 1257609
    (D. Or. Feb. 16, 2010) ...................................................................................................... 22

*Hallett v. Morgan*, 296 F.3d 732 (9th Cir. 2002) .................................................................. 15, 16

*Helling v. McKiney*, 509 U.S. 25 (1993) ..................................................................................... 10

*House v. Hicks*, 218 Or. App. 348, 179 P.3d 730 (2008) ............................................................ 21

*Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006) ............................................................................ 15

*Johns v. City of Eugene*, No. 6:16-cv-00907-AA, 2018 WL 634519 (D. Or. Jan. 30, 2018),
    *rev'd on other grounds*, 771 F. App'x 739 (9th Cir. 2019) ............................................ 22

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) .............................................................................. 18, 19

*Lovelace v. Oregon*, No. CV 08-3107-PA, 2009 WL 2450298 (D. Or. Aug. 10, 2009) ........ 15, 19

*Marsh v. Cty. of San Diego*, 680 F.3d 1148 (9th Cir. 2012) ....................................................... 18

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574 (1986) ........ 9

*McGanty v. Staudenraus*, 321 Or. 532, 901 P.2d 841 (1995) ..................................................... 20

*Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978) ................................. 9, 10

*Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) ......................................... 9

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

*Mullenix v. Luna*, 577 U.S. 7  (2015) .......................................................................... 19

*Ngo v. Reno Hilton Resort Corp.*, 140 F3d 1299 (9th Cir1998), *cert dismissed*,
    526 U.S. 1142 (1999) .................................................................................................. 25

*Or. Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329, 83 P.3d 322 (2004) .................. 24

*Pearson v. Callahan*, 555 U.S. 223 (2009) ...................................................................... 18

*Piazza ex rel v. Kellim*, 271 Or. App. 490, 354 P.3d 698 (2015) .............................................. 23

*Reichle v. Howards*, 566 U.S. 658 (2012) ...................................................................... 18

*Rhodes v. Chapman*, 452 U.S. 337 (1981) ...................................................................... 10

*Rodrigues v. Jackson Cty.*, No. 1:13-CV-01589-CL, 2015 WL 404577
    (D. Or. Jan. 29, 2015) ................................................................................................ 22

*Saberi v. City of Portland*, No. CV 04-1396-MO, 2006 WL 2707995
    (D. Or. Sept. 18, 2006) .............................................................................................. 22

*Sandoval v. Cty. of San Diego*, 985 F.3d 657, (9th Cir. 2021) ........................................ 9

*Schuler v. Chronicle Broad Co.*, 793 F.2d 1010 (9th Cir. 1986) ........................................ 8

*Shafer v. Cty. Of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017) ...................................... 19

*Sharp v. Cty. of Orange*, 871 F.3d 901 (9th Cir. 2017) ...................................................... 19

*Shilo v. City of Portland*, No. 04-130-AS, 2005 WL 3157563 (D. Or. Nov. 22, 2005) .............. 22

*Simpson v. Sisters of Charity of Providence in Oregon*, 284 Or. 547, 588 P.2d 4 (1978) .......... 24

*Smith v. Wade*, 461 U.S. 30 (1983) .............................................................................. 25

*Solberg v. Johnson*, 306 Or. 484, 760 P.2d 847 (1988) ...................................................... 23

*Son v. Ashland Community Healthcare Services*, 239 Or. App. 495, 244 P.3d 835 (2010) ......... 23

*Stewart v. Jefferson Plywood Co.*, 255 Or. 603, 469 P.2d 783 (1970) ...................................... 23

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) .................................................................. 8

*Thomas v. City of Portland*, No. CIV.05-1059-ST, 2007 WL 2286254
    (D. Or. Aug. 3, 2007) .................................................................................................. 25

*Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008) ........................................ 18

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503) 763-3875
Facsimile: (503) 763-3901

*United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir.),
    *cert. denied*, 493 U.S. 809 (1989) ........................................................... 8

*Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950 (9th Cir. 2008) ......................................... 9

*Whitfield v. Tri-Metro. Transp. Dist.*, No. 06-1655-HA, 2009 WL 839484
    (D. Or. Mar. 30, 2009) ........................................................... 22

*Wilson v. Layne*, 526 U.S. 603 (1999) ........................................................... 19

*Wilson v. Seiter*, 501 U.S. 294 (1991) ........................................................... 10

*Woods v. Gutierrez*, No. 3:11-CV-01082-BR, 2012 WL 6203170
    (D. Or. Dec. 12, 2012) ........................................................... 22

## **Rules**

Fed. R. Civ. P. 56(c) ........................................................... 8

Fed. R. Civ. P. 56(e) ........................................................... 8

**DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

## L.R. 7-1 CERTIFICATION

Pursuant to Local Rule 7-1, the undersigned certifies that counsel for defendants Columbia County and Carolyn Townsend (hereinafter "defendants") conferred with plaintiff's counsel, Jacob Johnstun, and discussed the claims, defenses, and issues which are the subject of Defendants' Motion for Summary Judgment.  Plaintiff's counsel has agreed to amend the Complaint to remove all allegations that plaintiff's Fourteenth Amendment rights were violated in plaintiff's First Claim for Relief, to remove all allegations against defendants of "Reckless Infliction of Severe Emotional Distress" in plaintiff's Second Claim for Relief, to state all claimed "special damages" with specificity, and to clarify which claims and parties against which punitive damages are being sought.  The parties were unable to resolve the remaining subject matter of this Motion.

## MOTION

Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 56-1, defendants move the Court for an order granting summary judgment on all of plaintiff's claims for relief because there is no genuine issue of material fact and defendants are entitled to summary judgment as a matter of law.  In addition, individual defendant Carolyn Townsend (hereinafter "Sergeant Townsend") is entitled to qualified immunity on plaintiff's federal claim against her.

In support of this motion, pursuant to LR 7-1(c), defendants rely on the Legal Memorandum set forth below, the Second Joint Statement of Agreed Material Facts (ECF No. 42), the Declaration of Brooke McDowall in Support of Defendants' Motion for Summary Judgment, the Declaration of Brian Pixley in Support of Defendants' Motion for Summary Judgment, the Declaration of Derek Hibbs in Support of Defendants' Motion for Summary Judgment, and the Declaration of Lauren E. Nweze in Support of Defendants' Motion for Summary Judgment with attached exhibits, and the pleadings on file herein.

/ / /

/ / /

/ / /

Page 1 -   **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

## LEGAL MEMORANDUM

### I. INTRODUCTION

On September 6, 2019, plaintiff was assaulted by another inmate within the Columbia County Jail.  Following his assault, plaintiff was released from custody to obtain medical care for the injuries he sustained in the assault.  Plaintiff now brings three claims against defendants, first a Section 1983 claim alleging violations of the Eighth and Fourteenth Amendments, second, a state tort claim for intentional / reckless infliction of severe emotional distress, and third, a state tort claim for negligence.

Defendants now bring this motion for summary judgment as the allegations underlying these claims asserted in plaintiff's Complaint are unsupported by the facts, and, in many instances, are directly controverted by the undisputed facts in the record.  As such, defendants are entitled to summary judgment as a matter of law as to each of plaintiff's claims.

### II. STATEMENT OF FACTS

Taylor Self ("plaintiff") was incarcerated at the Columbia County Jail beginning on June 24, 2019 based upon violations of his probation for the charge of unlawful possession of methamphetamine.  (2nd Joint Statement of Agreed Material Facts, ECF No. 42, ¶ 1.)  His probation was revoked on July 16, 2019; plaintiff was sentenced to six months incarceration, with credits for time served—his scheduled release date was September 14, 2019.  (*Id.* ¶¶ 2, 3.)  At the time of his admission into the jail on June 24, 2019, plaintiff had a surgically wired jaw because he had surgery on June 11, 2019 to repair a broken jaw.  (*Id.* ¶ 4.)

During this incarceration, plaintiff was housed in the "A-Pod" of the jail, due to being placed on medical isolation based upon his jaw condition.  (*Id.* ¶ 5.)  A-Pod is comprised of two levels of cells where inmates are housed, a central "day area" which has a television and tables to use when they are out of their cells, and a shower area.  (*Id.* ¶ 6.)  Each level of A-Pod has eight (8) cells where inmates are housed.  (*Id.*)  Each of these cells has two bunks and can hold up to two inmates at a time.  (*Id.*)  A-Pod houses a variety of male inmates, such as pre-classification

Page 2 -   **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503) 763-3875
Facsimile: (503) 763-3901

inmates, maximum security inmates, close custody inmates, inmates on administrative segregation, inmates on disciplinary lockdown, as well as inmates who are placed on medical isolation.  (*Id*. ¶ 7.)  It is common for two inmates to be housed in the same cell within A-Pod, including inmates there for purposes of medical isolation.  (McDowall Decl., ¶ 7; Townsend Deposition Transcript, p. 15, lines 19-25, p. 16, lines 1-7, p. 20, lines 14-25, p.21, lines 1-2, Nweze Decl., Ex. 3.)  An indication that an inmate is to be medically isolated does not necessarily mean the inmate needs to be housed in a cell by him or herself.  (*Id*.)  Whether an inmate needs to be housed in a cell by him or herself is a fact-specific, case by case determination.  (*Id*.)

On August 24, 2019, plaintiff submitted an inmate medical request form in which he represented that he had full use of his mouth and he asked to be "cleared".  (2nd Joint Statement of Agreed Material Facts, ¶ 8, ECF No. 42.)  Just three days later, August 27, 2019, plaintiff submitted another inmate medical request form stating that he should not be in the medical isolation unit any longer as his jaw injury was fully healed.  (*Id*. ¶ 9.)  On August 30, 2019, jail medical staff declined plaintiff's request to be taken out of the medical isolation unit, indicating he would be kept in the unit due to the hardware still in his mouth for his self-safety.  (*Id*. ¶ 10.)  The note did not prohibit sharing a cell with another inmate in the medical isolation unit.  (*Id*.)

On September 6, 2019, Sergeant Townsend approached plaintiff and asked him about having another inmate, Kelsey Kalama (hereinafter "Kalama") move into his cell (cell number AT-5) with him.  (*Id*. ¶ 11.)  Sergeant Townsend made this request due to the need to make room for new incoming inmates.  (*Id*.)  Before speaking with either plaintiff or Kalama regarding their housing arrangements, Sergeant Townsend spoke to jail medical staff.  (Townsend Deposition Transcript, p. 21, lines 13-24, Nweze Decl., Ex. 3.)  Sergeant Townsend recalls jail staff informed her that both plaintiff and Kalama were on medical isolation from the general population, but they were not on medical isolation from one another.  (*Id*.)  Sergeant Townsend notified plaintiff that jail medical staff cleared plaintiff and another inmate in A-Pod to cell together.  (2nd Joint Statement of Agreed Material Facts, ECF No. 42, ¶ 12.)  In indicating who

Page 3 -    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503) 763-3875
Facsimile: (503) 763-3901

the other inmate was, Sergeant Townsend pointed towards a cell nearby. (*Id*.) Plaintiff initially opposed this, indicating that this would "not be good" and they would be "stepping on toes." (*Id*.) He then stated "alright, whatever, f*** it." (*Id*.) In response, Sergeant Townsend stated "no, I'm not going to put anyone in a situation to compromise their safety." (*Id*.) Plaintiff then realized Sergeant Townsend was proposing bunking with Kalama, not another inmate (identified by plaintiff as number "four"). (2nd Joint Statement of Agreed Facts, ¶ 13 and Exhibit 1, Townsend BWC, 2:01-2:35, ECF No. 42; Townsend Deposition Transcript, p. 14, lines 3-19, p. 16, lines 15-18, p. 17, lines 1-4, Nweze Decl., Ex. 3.) Plaintiff stated "You are saying me and him? Me and five?" (*Id*. ¶ 14.) To which Sergeant Townsend responded "Ya." (*Id*.) Plaintiff then stated, "Alright, that's better than me and four." (*Id*.) Clarifying, Sergeant Townsend responded, "Oh no I said five, ya, Kalama." (*Id*.) Then when directly asked by Sergeant Townsend if housing with Kalama was "good", he agreed, responding "ya." (*Id*.) Sergeant Townsend then stated, "Oh, did you think it was you and Nelson?" (*Id*.) To which plaintiff responded "Ya." (*Id*.) This exchange was captured on Sergeant Townsend's body worn camera footage. (2nd Joint Statement of Agreed Material Facts, Townsend BWC, Exhibit 1, ECF No. 42.)

During the entire exchange between Sergeant Townsend and plaintiff regarding this housing decision, plaintiff made no mention of any concerns related to Kalama. (2nd Joint Statement of Agreed Facts, Exhibit 1, Townsend BWC, 1:30-2:50, ECF No. 42; Townsend Deposition Transcript, p. 18, lines 7-24, Nweze Decl, Ex. 3.) This was the only conversation that took place between plaintiff and Sergeant Townsend (or any other Columbia County employee) regarding the decision to house plaintiff and Kalama in the same cell. (Self Deposition Transcript, p. 22, lines 14-25, p. 23, lines 1, 12-14, and p. 24, lines 1-17, Nweze Decl., Ex. 4.)

At the time the decision to place plaintiff and Kalama in the same cell was made, plaintiff and Kalama had been housed within the same housing unit for approximately two months. (2nd

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

Statement of Agreed Material Facts, ¶ 15, ECF No. 42.)  There had never been any verbal or physical altercations between the two.  (*Id*.)  Prior to plaintiff's conversation with Sergeant Townsend, plaintiff had not reported any concerns related to Kalama to any jail staff.  (Self Deposition Transcript, p. 24, lines 2-5, 14-17, Nweze Decl., Ex. 4.)  Neither plaintiff nor Kalama had ever stated any animosity existed between one another.  (*Id*.)  Sergeant Townsend was not aware of any history of aggression by Kalama. (Townsend Deposition Transcript, p. 40, lines 16-19, Nweze Decl., Ex. 3.)

Based upon plaintiff's (and Kalama's) agreement to the new housing arrangements, Sergeant Townsend directed Kalama to cell in with plaintiff.  (Townsend Deposition Transcript, p. 17, lines 24-25, p. 18, lines 1-6, Nweze Decl., Ex. 3.)  Kalama began collecting his possessions and moving them into the cell plaintiff was already in, AT-5, located on the upper floor of A-Pod.  (2nd Joint Statement of Agreed Material Facts, ¶ 17, ECF No. 42.)  While Kalama was moving his possessions into cell AT-5, plaintiff was outside of the cell, walking around the day area of A-Pod on the ground level and watching the television.  (*Id*. ¶ 18.)  As he was moving his possessions, Kalama observed several open milk cartons of plaintiff's located in cell AT-5.  (*Id*. ¶ 19.)  Kalama walked out of the cell to the railing of the second floor and requested that plaintiff (who was still on the ground floor in the day area) get rid of the milk cartons.  (*Id*. ¶ 20.)  In response to Kalama's request, plaintiff responded "no" and that if Kalama did not like it, he could "roll up."  (*Id*. ¶ 21.)  Perceiving plaintiff's response as disrespectful, Kalama quickly descended the stairs, approached plaintiff, and then punched plaintiff on the right side of his face, in the jaw area.  (*Id*. ¶ 22.)  Plaintiff fell to the floor after being punched, got back on his feet, exchanged words with Kalama, but did not physically retaliate against Kalama.  (*Id*. ¶ 23.)  Kalama's assault against plaintiff occurred at approximately 4:45 p.m.  (*Id*. ¶ 25.)  Kalama's assault against plaintiff occurred in the day room area of the A-Pod and not in a cell.  (*Id*. ¶ 26.)  This altercation between plaintiff and Kalama was captured on jail security footage.  (2nd Joint Statement of Agreed Material Facts, Exhibit 2, ECF No. 42.)

Page 5 -  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503) 763-3875
Facsimile: (503) 763-3901

After this exchange, plaintiff briefly resumed walking around the day area of the unit. (*Id*. ¶ 27.)  Jail deputies responded within two minutes to investigate what occurred and see whether any medical attention was required.  (Hibbs Decl., ¶ 3; 2nd Joint Statement of Agreed Material Facts, ¶ 28, ECF No. 42.)  During plaintiff's interview with corrections staff following the incident, plaintiff stated that he and Kalama had agreed to cell together.  (Hibbs Decl., ¶ 4.) During this interview, he also reported that his jaw was hurting and believed it may be broken again.  (2nd Joint Statement of Agreed Material Facts, ¶ 29, ECF No. 42.)  Jail staff responded that they would request that medical staff come check him out as soon as possible.  (*Id*.)  Plaintiff testified at deposition that a nurse from the jail came to assess him around approximately 8:00 p.m. that evening in his cell.  (*Id*. ¶ 30.)  Plaintiff testified that the nurse did not indicate whether or not any medical treatment would be provided and that no other medical staff visited him.  (*Id*.)  After plaintiff was seen by the jail nurse, he did not request any further medical attention.  (Self Deposition Transcript, p. 45, lines 18-25, p. 46, lines 1-2, Nweze Decl., Ex. 4.)

Columbia County Jail, through Sergeant Townsend's orders, released Plaintiff from custody the same evening and he left the facility at about 10:30 p.m.  (2nd Joint Statement of Agreed Material Facts, ¶ 31, ECF No. 42.)  Plaintiff signed a "conditional release" agreement prior to his release from custody.  (*Id*. at ¶ 32.)  Plaintiff did not object or complain to jail staff about being released from custody on September 6, 2019; rather, he indicated he was happy he was released.  (*Id*.; Self Deposition Transcript, p. 53, lines 17-23, Nweze Decl., Ex. 4.)

Upon his release, plaintiff walked to Miranda Neveau's residence, a friend of his mother; plaintiff testified her residence was approximately one mile from the jail.  (2nd Joint Statement of Agreed Material Facts, ¶ 33, ECF No. 42.)  Plaintiff believed he arrived at Ms. Neveau's residence at approximately 11:00 p.m.  (*Id*.)  Plaintiff called both his mother and stepfather, requesting either provide him a ride to seek medical attention.  (*Id*. ¶ 34.)  His mother gave him a ride to OHSU and they arrived at about 12:56 a.m. (on September 7).  (*Id*. ¶ 35.)

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

At OHSU, plaintiff informed the medical providers about Kalama's assault and his prior jaw injury and surgery. (*Id*. ¶ 36.) Plaintiff reported experiencing a "dull, constant, and moderate" pain in his left jaw. (*Id*.) Plaintiff rated his pain between a two and three on a scale out of ten. (*Id*.) The medical providers charted that plaintiff's jaw was swollen on the left side and tender, but that plaintiff did not appear to be in acute distress. (*Id*.) The medical providers determined his previous jaw fracture was minimally or mildly displaced (both terms were used interchangeably in plaintiff's medical records) and recommended an outpatient operative fixation be performed at a later date. (*Id*. ¶ 37.) Plaintiff did not undergo any procedures to repair or otherwise treat his jaw injury on September 7, 2019. (*Id*.) For his pain, plaintiff was provided Tylenol and Motrin. (*Id*.) Plaintiff was also placed on a liquid diet and provided mouthwash. (*Id*.) Plaintiff was discharged home from OHSU on September 7, 2019 at 6:24 a.m. in stable condition. (*Id*. ¶ 38.)

Not until almost two weeks later, on September 20, 2019, was plaintiff seen at a Legacy Emanuel clinic for a follow up visit. (*Id*. ¶ 39.) During this visit, plaintiff decided he would undergo an open reduction internal fixation procedure and have the hardware in his jaw removed. (*Id*.) The procedure was scheduled to take place on September 26, 2019. (*Id*.) Plaintiff described during his deposition that between September 7, 2019 and his procedure on September 26, 2019, his pain was "like a sprained ankle" in that if you moved it, it would hurt, but otherwise it was fine. (*Id*. ¶ 40.)

On September 26, 2019, plaintiff went to Legacy Emanuel Hospital for his procedure. (*Id*. ¶ 41.) During his examination prior to the procedure, his medical provided noted that "**[n]o change** has occurred in the patient's condition since the H&P was completed less than 30 days ago." (*Id*.) (emphasis in original.) On that same date, plaintiff underwent the procedure and had the hardware in his jaw removed. (*Id*. ¶ 42.) Plaintiff testified at deposition that there were no complications from this procedure. (*Id*.) Plaintiff was discharged from Legacy Emanuel on September 27, 2019 upon his request. (*Id*. ¶ 44.)

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

No medical provider told plaintiff that the manner or time he was released from custody aggravated his jaw injury. (Self Deposition Transcript, p. 70, lines 11-15, Nweze Decl., Ex. 4.) No medical provider told plaintiff that the manner or time he was released from custody in any way altered or changed his course of treatment for his jaw injury. (Self Deposition Transcript, p. 70, lines 16-19, Nweze Decl., Ex. 4.)

### III.  SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Bahn v. NME Hosp's, Inc.*, 929 F.2d 1404, 1409 (9th Cir.), *cert. denied*, 502 U.S. 994 (1991). The moving party must carry the initial burden of proof. The party meets this burden by identifying portions of the record on file which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

Once the moving party meets its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "[I]t [cannot] be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). The "mere existence of a scintilla of evidence in support of the Plaintiff's position would be insufficient" to defeat a motion for summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). Evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. denied*, 493 U.S. 809 (1989). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Schuler v. Chronicle Broad Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (purely "subjective personal judgments do not raise a genuine issue of material fact.")

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

Accordingly, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986).

## IV.  LEGAL MEMORANDUM

### A.    <u>Defendants Are Entitled to Summary Judgment on Plaintiff's Section 1983 Claim</u>.

1.    <u>Defendants Are Entitled to Summary Judgment on Plaintiff's 14th Amendment Claim as Plaintiff was a Sentenced Inmate, Not a Pretrial Detainee</u>.

Generally, claims brought pursuant to Section 1983 for inmates serving custodial sentences following a criminal conviction must be raised under the Eighth Amendment's guarantee against cruel and unusual punishment.  *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

During conferral for this motion, plaintiffs' counsel agreed that plaintiff's Fourteenth Amendment claim fails, and indicated he would amend, withdrawing all Fourteenth Amendment allegations.  Accordingly, plaintiff concedes summary judgment on the Fourteenth Amendment claim.

2.    <u>Defendant Columbia County Is Entitled to Summary Judgment on Plaintiff's Section 1983 As There Are No Allegations or Proof of *Monell* Liability</u>.

To survive a summary judgement on plaintiff's Section 1983 claim against defendant Columbia County, a municipal entity, plaintiff must have admissible evidence his alleged constitutional injury was caused by employees acting pursuant to the municipality's policy or custom.  *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977); *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978); *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008).  Defendant Columbia County may not be held vicariously liable under Section 1983 simply based on alleged acts of unconstitutional acts of its

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

employees. *See Board of Cty. Comm'rs. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691.

Plaintiff's Complaint does not even allege that his constitutional injury was caused by defendant Columbia County's policy or custom, nor is there any evidence so establishing. (*See* Compl., ¶¶ 14-20.) Accordingly, defendant Columbia County is entitled to summary judgment on plaintiff's Section 1983 claim as a matter of law.

3. <u>Sergeant Townsend is Entitled to Summary Judgment on Plaintiff's Section 1983 Claim.</u>

(a) *Sergeant Townsend's Housing Decision Does Not Constitute a Violation of the Eight Amendment.*

For plaintiff's Eighth Amendment claim to survive summary judgment, he must prove that his particular conditions of confinement were both objectively and subjectively cruel and unusual. *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991). While the Eighth Amendment includes an obligation "to protect prisoners from violence at the hands of other prisoners", not every inmate-inflicted injury gives rise to a claim against prison officials. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). To hold Sergeant Townsend liable for failing to protect him, plaintiff must demonstrate first, that he was "incarcerated under conditions posing a substantial risk of serious harm"; and second, that Sergeant Townsend harbored "deliberate indifference to inmate health or safety." *Id*. at 834.

The first objective harm element requires a showing that the deprivation be sufficiently serious, resulting in a denial of the "minimal civilized measures of life's necessities." *Id*. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Further, there must be a finding that society considers the acts that plaintiff complains of "to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to those acts." *Helling v. McKiney*, 509 U.S. 25, 36 (1993). As it relates to claims involving inmate violence, a substantial risk of serious harm requires more than "a mere suspicion that the attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted); *see also Benson v. Peters*, No. 2:14-CV-00132-

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503) 763-3875
Facsimile: (503) 763-3901

CL, 2018 WL 7893267, at *3–4 (D. Or. Dec. 6, 2018), *report and recommendation adopted*, No. 2:14-CV-00132-CL, 2019 WL 1446965 (D. Or. Mar. 31, 2019) (one isolated expression of hostility, plaintiff stating other inmate and he "hated" each other insufficient to establish substantial risk of serious harm.)

      The second subjective "deliberate indifference" element requires proof that Sergeant Townsend was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that she "also dr[e]w the inference." *Farmer*, 511 U.S. at 837. Plaintiff must then establish that Sergeant Townsend disregarded this known risk. *Id*. Evidence of either negligence or gross negligence is insufficient to establish deliberate indifference. *Id*. at 835-36. Even an "official's failure to alleviate a significant risk that [s]he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. at 838.

      As to the first element, there is no admissible evidence that plaintiff was exposed to a serious risk of harm.  First, there is no evidence demonstrating that inmate Kalama had a "violent and aggressive character" as alleged.[1]  (Compl., ¶ 5.)  Plaintiff himself is unaware of any such evidence.  (Self Deposition Transcript, p. 25, lines 13-19, Nweze Decl., Ex. 4.)  Second, there is no evidence supporting plaintiff's claim that there was "animosity" between himself and Kalama.  The assault occurred in the housing unit day area and they had been housed within the same housing unit for approximately two months without incident.  (2nd Joint Statement of Agreed Material Facts, ¶¶ 15, 19-22, ECF No. 42.)  At the time Sergeant Townsend decided to place plaintiff and Kalama in the same cell, there had never been any prior verbal or physical altercations between the two, nor had any written reports, complaints, or grievances been filed by plaintiff regarding any issues or animosity with Kalama. (*Id*. ¶ 15.)  Furthermore, the unsupported allegation that plaintiff told Sergeant Townsend there was "animosity" between

---

[1] To the extent plaintiff argues that Kalama hit a telephone prior to the assault and this is demonstrative of a "violent and aggressive character", defendants disagree with this assertion – this was an isolated incident and establishes no threat to other inmates.

Page 11 -  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503) 763-3875
Facsimile: (503) 763-3901

himself and inmate Kalama (Compl., ¶ 6), even if taken as true, is insufficient to establish a substantial risk of serious harm posed to plaintiff by Kalama.[2]  A solitary statement about unspecified "animosity" between inmates does not objectively establish a serious risk of harm was present.  At best, this statement, even if there is a question of fact whether it was said, could be viewed as mere suspicion an attack could occur, though defendants submit that a vague comment having "animosity" with another inmate does not equate to even a mere suspicion of future assaultive behavior.

As to the second subjective element, the record is also devoid of evidence establishing Sergeant Townsend acted with deliberate indifference.  The allegation that Sergeant Townsend was "aware of Kalama's violent and aggressive character" (Compl., ¶ 5) is unsupported by the admissible evidence.  Again, the assault occurred in the day area of the housing unit that plaintiff and Kalama had shared for previous two months without incident.  (2nd Joint Statement of Agreed Material Facts, ¶ 15, ECF No. 42.)

There is no evidence that Sergeant Townsend had been informed by plaintiff that animosity existed between himself and Kalama.  Both plaintiff and Sergeant Townsend testified that a single conversation occurred between the two of them regarding the housing decision. (Townsend Deposition Transcript, p. 13, lines 10-25, p. 14, lines 1-19, Nweze Decl., Ex. 3; Self Deposition Transcript, p. 22, lines 14-25, p. 23, lines 1-14, p. 28, lines 12-15, Nweze Decl., Ex. 4.)  Plaintiff testified this conversation occurred around 4:30 p.m., approximately 15 minutes prior to the assault.  (Self Deposition Transcript, p. 22, lines 18-20, Nweze Decl., Ex. 4; 2nd Joint Statement of Agreed Facts, ¶ 25, ECF No. 42.)  Sergeant Townsend's body worn camera, recorded at 4:34 p.m. on September 6, 2019 (Pixley Decl., ¶ 5), approximately 10 minutes prior to the assault, shows a conversation between plaintiff and Sergeant Townsend in which they discuss plaintiff sharing a cell with Kalama.  (2nd Joint Statement of Agreed Facts, Exhibit 1,

---

[2] Defendants dispute this statement was ever made by plaintiff.  The record does not support that plaintiff ever made this statement to Sergeant Townsend, as discussed below.

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

ECF No. 42.)  In this recorded conversation, plaintiff never mentions any "animosity" between himself and Kalama.[3]  (2nd Joint Statement of Agreed Facts, ¶¶ 11-14, ECF No. 42; *see also* Townsend Deposition Transcript, p. 18, lines 10-14, 20-24, Nweze Decl., Ex. 3.)  Furthermore, plaintiff agreed to sharing a cell with Kalama and when asked if housing with Kalama was "good" by Sergeant Townsend, he responded, "ya."  (2nd Joint Statement of Agreed Facts, ¶ 14, ECF No. 42; Townsend Deposition Transcript, p. 17, lines 19-25, p. 18, lines 1-9, Nweze Decl., Ex. 3.)  Plaintiff confirmed he had agreed to share a cell with Kalama after the assault when questioned by Deputy Hibbs.  (Hibbs Decl., ¶ 4.)

It is also notable that during the recorded conversation between plaintiff and Sergeant Townsend, when plaintiff initially believed Sergeant Townsend was asking him to share a cell with an inmate other than Kalama, Sergeant Townsend stated: "No, I'm not going to put anyone in a situation to compromise their safety."  (2nd Joint Statement of Agreed Facts, ¶ 12, ECF No. 42.)  This statement demonstrates that she was not acting with deliberate indifference towards plaintiff's safety – to the contrary, she was attempting to ensure that plaintiff's safety would not be compromised by her housing decision.

There is also no evidence that Sergeant Townsend (or any other jail staff member) was aware, or should have been aware, of any known risk posed to plaintiff by Kalama prior to September 6, 2019.  The assault occurred in the day area of the housing unit.  (2nd Joint Statement of Agreed Material Facts, ¶¶ 19-22, ECF No. 42.)  Prior to this, plaintiff and Kalama had been housed within the same housing unit for approximately two months without incident.  (2nd Joint Statement of Agreed Facts, ¶ 15, ECF No. 42.)  There had never been any prior verbal or physical altercations or any other known problems between the two.  (*Id.*)  It is also undisputed that plaintiff never told Sergeant Townsend, or any other jail staff member, that any

---

[3] The body worn camera footage also depicts Sergeant Townsend's conversation with Kalama regarding the housing decision – as with plaintiff, during this conversation, Kalama never mentions any animosity, hostilities, issues, or concerns in housing with plaintiff.  (2nd Joint Statement of Agreed Facts, Exhibit 1, Townsend BWC, 3:00-4:08, ECF No. 42.)

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503) 763-3875
Facsimile: (503) 763-3901

animosity or issues existed between himself and Kalama prior to September 6, 2019, rather, plaintiff testified it was an "unspoken animosity". (Self Deposition Transcript, p. 24, lines 2-5, 14-17, p. 27, lines 16-25, Nweze Decl., Ex. 4.)

Finally, plaintiff's allegation that Sergeant Townsend's housing decision was against physician's orders also lacks support in the record. While it is true plaintiff was placed on medical isolation status, this does not require that an inmate be housed in a cell by himself. (McDowall Decl., ¶ 7.) In fact, it is common to have two inmates housed within the same cell in the A-Pod who are both on medical isolation status. (*Id*.; Townsend Deposition Transcript, p. 15, lines 19-25, p. 16, lines 1-7, p. 20, lines 14-25, p. 21, lines 1-2, Nweze Decl., Ex. 3.) Furthermore, Sergeant Townsend testified that prior to making her decision to house plaintiff and Kalama together, she consulted with jail medical staff and cleared it with them first. (Townsend Deposition Transcript, p. 21, lines 13-24, Nweze Decl., Ex. 3.) This testimony is corroborated by statements Sergeant Townsend made to both plaintiff and Kalama on the body worn camera footage. (2nd Joint Statement of Agreed Facts, Exhibit 1, Townsend BWC, 1:35-1:40; 3:00-3:10, 3:27-3:48, ECF No. 42.)

Plaintiff's claim that Sergeant Townsend violated his rights when she made the decision to house him with Kalama is without factual support as to both the objective and subjective elements of an Eighth Amendment claim. There is no evidence that a substantial risk of serious harm existed at the time Sergeant Townsend made the decision, and there is no evidence that she made the decision with deliberate indifference. Accordingly, Sergeant Townsend is entitled to summary judgment as a matter of law and plaintiffs claim should be dismissed.

       (b)    *Sergeant Townsend's Release Decision Does Not Constitute an Eighth Amendment Violation.*

Plaintiff has also alleged that his release from custody on the evening of September 6, 2019 constituted a deprivation of his Eighth Amendment right to medical care. Sergeant Townsend is entitled to summary judgment because there is no constitutional right to *not* be

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503) 763-3875
Facsimile: (503) 763-3901

released from custody and furthermore, plaintiff suffered no harm as a result of his being released from custody.

The mere fact that plaintiff was released ahead of his scheduled released date does not, standing alone, amount to a constitutional violation.  There is no constitutional right to remain in jail and defendants can find no case that even remotely creates such a constitutional right.  In fact, the only cases defendants were able to find that most closely discussed this issue held to the contrary.  *See Lovelace v. Oregon*, No. CV 08-3107-PA, 2009 WL 2450298, at *6 (D. Or. Aug. 10, 2009) (holding that plaintiff could not demonstrate that his release on parole before his good time release date did not violate his constitutional rights); *Gilliam v. Johnson*, No. 1:12-CV-01008, 2015 WL 1419346, at *2 (W.D. Ark. Mar. 27, 2015) (holding "a reasonable jail official would not have been on notice that releasing an inmate to receive recommended surgery on his own accord rather than the County paying for the surgery would violate that inmate's constitutional rights"); *see also Brass v. Cty. of Los Angeles*, 328 F.3d 1192, 1201 (9th Cir. 2003) (concluding a 39-hour *delay* in releasing plaintiff from custody did not constitute a denial of plaintiff's due process rights.)  To the extent plaintiff is merely relying upon Sergeant Townsend's release determination as the basis for his claim of an Eighth Amendment violation, his claim fails.

Further, to the extent plaintiff is alleging that defendants were deliberately indifferent to plaintiff's medical needs under the Eighth Amendment, his claim still fails.  Plaintiff must first establish the existence of a serious medical need, and second, that Sergeant Townsend's response to this need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Id*.  Deliberate indifference to serious medical needs may occur where there is either a denial, delay, or intentional interference with medical treatment.  *Id*.; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

Based upon plaintiff's testimony, he was not denied access to medical care on September 6, 2019. Shortly after the assault, jail staff informed plaintiff they would request that medical personnel come assess him as soon as possible and later that evening, around 8:00, plaintiff's injuries were assessed by a nurse in the jail. (2nd Joint Statement of Agreed Facts, ¶¶ 29, 30, ECF No. 42.) At approximately 10:30 p.m. that evening, plaintiff was released from custody. (*Id*. at ¶ 31.)

As plaintiff was not denied access to medical care while he was still incarcerated, it appears that plaintiff's claim is that by releasing plaintiff that evening, Sergeant Townsend unconstitutionally delayed plaintiff's access to care.[4] (*See* Compl., ¶¶ 12, 13, 18, 19.) To survive summary judgment on this claim, plaintiff must establish that the delay in treatment led to "significant harm." *Hallett*, 296 F.3d at 746; *see also Donohue v. Vargo*, No. 2:16-CV-00788-MC, 2018 WL 3964804, at *4 (D. Or. Aug. 17, 2018), *aff'd*, 771 F. App'x 413 (9th Cir. 2019) (concluding a two-day delay in assessing plaintiff did not constitute deliberate indifference as there was no evidence plaintiff suffered serious harm as a result of delay, particularly in light of the fact plaintiff did not indicate what alternative treatment he should have received); *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (directing a verdict declining to find deliberate indifference for a two-hour delay in providing medical care for blood found in an inmate's urine and an overnight delay in providing antibiotics for the diagnosed bladder infection where the delays caused no harm). The undisputed testimony of plaintiff demonstrates that plaintiff's release resulted in no harm to him whatsoever.

The only delay in medical care plaintiff experienced was approximately two hours between his release and when he checked in to OHSU at 12:56 a.m. on September 7, 2019. (2nd Joint Statement of Agreed Facts, ¶ 35, ECF No. 42.) When he arrived at OHSU, plaintiff was assessed by medical providers. (*Id*. ¶ 36.) Plaintiff reported experiencing a "dull, constant, and

---

[4] There are no allegations or evidence to suggest Sergeant Townsend in any way interfered with the nurse's assessment of plaintiff. (*See*, generally, Compl.)

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503) 763-3875
Facsimile: (503) 763-3901

moderate" pain in his left jaw, rating it between a two and three on a scale out of ten.  (*Id.*)
OHSU noted that plaintiff did not appear to be in acute distress.  (*Id.*)  Ultimately, OHSU
diagnosed plaintiff's injury and recommended he receive treatment at a later date.  (*Id.* ¶ 37.)
Plaintiff received no emergent care or any other procedures at OHSU on September 7, 2019 and
was discharged approximately five and half hours after arrival.  (*Id.* ¶¶ 35, 37, 38.)  It is worth
noting that the treatment plaintiff received at OHSU was substantially the same as the treatment
he reported receiving in the jail – he was assessed by a medical provider and no further treatment
was provided at that time.  The only difference is plaintiff was provided over the counter Tylenol
and Motrin prior to his release from OHSU.  (*Id.*)  Further, OHSU never indicated to plaintiff
that his condition was aggravated by his release, nor was his treatment altered or changed as a
result of his release from custody.  (Self Deposition Transcript, p. 70, lines 11-21, Nweze Decl.,
Ex. 4; *see also* Nweze Decl., Ex. 5 (OHSU Medical records from 9/7/2019).)  Accordingly, there
is no evidence demonstrating that the two-hour delay between plaintiff's release from custody
and his admission at OHSU approximately two hours later resulted in "significant harm" to
plaintiff.

Plaintiff did not receive any other medical care related to the injuries he sustained from
Kalama's assault upon him until September 20, 2019, almost two weeks later.  (2nd Joint
Statement of Agreed Facts, ¶ 39, ECF No. 42.)  At this time, plaintiff was seen by Legacy
Emanuel, where they determined his specific course of treatment and scheduled a repair
procedure for September 26, 2019.  (*Id.*)  When plaintiff was examined on September 26, 2019,
Legacy Emanuel noted that "**[n]o change** has occurred in the patient's condition since the H&P
was completed less than 30 days ago."  (*Id.* ¶ 41 (emphasis in original.)  Nothing in the Legacy
Emanuel record suggested that plaintiff's condition was aggravated by his release, nor was his
treatment altered or change as a result of his release from custody.  (*Id.*; *see also* Nweze Decl.,
Exs. 6 and 7 (Legacy Medical Records, 9/20/2019 and 9/26/19 visits).)

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

Finally, there is no evidence that Sergeant Townsend was acting with deliberate indifference when she made the decision to release plaintiff on September 6, 2019. Plaintiff was released in order to obtain medical care. (Inmate Release Checklist dated 9/6/2019, Nweze Decl. Ex. 8; Self Declaration Transcript p. 52, lines 22-25, p. 53, line 1-13, Nweze Decl., Ex. 4.) Releasing plaintiff so that he could obtain medical care for his jaw injury is not evidence of deliberate indifferent to his medical needs.

There is nothing demonstrating plaintiff was denied medical care, experienced significant harm as a result of any delay in medical care, or that Sergeant Townsend acted with deliberate indifference to plaintiff's medical needs when she released plaintiff. Accordingly, Sergeant Townsend is entitled to summary judgment and plaintiff's claim should be dismissed.

> (c)    *Sergeant Townsend Is Entitled to Qualified Immunity on Plaintiff's Section 1983 Claim.*

Sergeant Townsend is entitled to qualified immunity. Qualified immunity shields government officials under Section 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The Court may address the two prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Qualified immunity is a question of law, not of fact. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). Plaintiff bears the burden of proving that qualified immunity should not be granted. *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018); *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012).

Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664. This "mean[s] that existing precedent placed the

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

statutory or constitutional question beyond debate.'" *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S.Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). This exacting standard "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.*

The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality. *Kisela*, 138 S.Ct. at 1152; *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). In other words, plaintiff must point to prior case law that articulates a constitutional rule specific enough to alert these officers in this case that their particular conduct was unlawful in the specific context of the case. *Mullenix*, 577 U.S. at 12; *Sharp v. Cty. of Orange*, 871 F.3d 901, 905 (9th Cir. 2017). To achieve that kind of notice, the prior precedent must be "controlling"— from the Ninth Circuit or Supreme Court—or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction. *Id.*; *Wilson v. Layne*, 526 U.S. 603, 617 (1999). Plaintiff bears the burden of showing that the rights allegedly at issue were clearly established. *Shafer v. Cty. Of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017).

As discussed in detail *supra*, plaintiff cannot establish that Sergeant Townsend violated constitutional rights which were clearly established. First, it is not clearly established that Sergeant Townsend could not make an administrative housing decision based upon the circumstances she was confronted with on September 6, 2019. Second, it is not clearly established that plaintiff has a right to *not* be released from custody. *See Lovelace*, 2009 WL 2450298, at *6 (holding that plaintiff could not demonstrate that his release on parole before his good time release date did not violate his constitutional rights). Finally, it is not clearly established that Sergeant Townsend was not permitted to release plaintiff from custody in order for him to obtain medical treatment that could not be provided within the jail. *See e.g. Gilliam*, 2015 WL 1419346, at *2 (holding "a reasonable jail official would not have been on notice that releasing an inmate to receive recommended surgery on his own accord rather than the County

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

paying for the surgery would violate that inmate's constitutional rights."). This is especially true where the decision to release resulted in no significant harm to plaintiff.

Accordingly, Sergeant Townsend is entitled to qualified immunity and dismissal of plaintiff's Eighth Amendment Section 1983 claim against her.

**B.      Defendants Are Entitled to Summary Judgment on Plaintiff's Infliction of Emotional Distress Claim**.

   1.      A Claim for "Reckless Infliction of Emotion Distress" is Not a Cognizable Claim Under Oregon Law.

During conferral for this motion, plaintiff's counsel agreed that plaintiff's reckless infliction of emotional distress claim fails, and indicated he would amend, withdrawing this allegation. Accordingly, plaintiff concedes summary judgment on this claim.

   2.      Defendants Are Entitled to Summary Judgment on Plaintiff's Intentional Infliction of Severe Emotional Distress Claim as There Is No Genuine Issue of Material Fact as to Intent, Outrageous Conduct, or Severe Emotional Distress.

Plaintiff's intentional infliction of emotional distress claim requires proof (1) that defendants intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; (2) that defendants engaged in outrageous conduct, i.e., conduct extraordinarily beyond the bounds of socially tolerable behavior; and (3) that defendants' conduct in fact caused plaintiff severe emotional distress. *McGanty v. Staudenraus*, 321 Or. 532, 543, 550, 901 P.2d 841 (1995).

As to the first element, plaintiff must prove that defendant desired to inflict severe emotional distress or that defendant knew that such distress was substantially certain to result from his or her volitional act. *Babick v. Oregon Arena Corp.*, 333 Or. 401, 412–413, 40 P.3d 1059 (2002). The undisputed facts demonstrate no such intent existed on the part of defendants.

The assault occurred in the day area of the housing unit that plaintiff and Kalama had been sharing for two months without incident. (2nd Joint Statement of Agreed Facts, ¶¶ 15, 19-22, ECF No. 42.) When Sergeant Townsend directed Kalama to house with plaintiff, this was not done against physician's orders. (*See supra*, p. 14.) Additionally, Sergeant Townsend's

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503) 763-3875
Facsimile: (503) 763-3901

stated intent in making this housing decision was to make room for new incoming inmates within the jail.  (2nd Joint Statement of Agreed Facts, Exhibit 1, Townsend BWC, 3:00-3:21, ECF No. 42; Townsend Deposition Transcript, p. 13, lines 16-19, Nweze Dec., Ex. 3.)  Furthermore, as discussed at length *supra* (pp. 12-14), in making this decision, Sergeant Townsend was not aware of any "animosity" between plaintiff and Kalama which would indicate the housing decision posed any risk to plaintiff.

There is also no evidence that releasing plaintiff on September 6, 2019 was motivated by an intent to inflict severe emotional distress upon plaintiff.  Defendants' determination to release plaintiff that evening was so that he could obtain medical care, not with any intent that it cause plaintiff severe emotional distress.

As to the second element of plaintiff's claim, the trial court often must play a "gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior[.]"  *House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d 730 (2008).  Defendants' administrative housing decision and subsequent release of plaintiff so he could obtain medical treatment, even when viewed in the light most favorable to plaintiff, does not go beyond the bounds of socially tolerable behavior.

Finally, there is also no evidence that plaintiff suffered severe emotional distress resulting from defendants' conduct.  During plaintiff's deposition, he testified that he was happy to be released on September 6, 2019, and that he was "relieved in some instance."  (Self Deposition Transcript, p. 53, lines 17-23, Nweze Decl., Ex. 4.)

There is no genuine issue of material fact supporting plaintiff's IIED claim and therefore defendants are entitled to summary judgment as a matter of law.

/ / /

/ / /

/ / /

Page 21 -  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

**C.**    <u>**Defendant is Entitled to Summary Judgment on Plaintiff's Negligence Claim.**</u>

1.    <u>Defendants Are Entitled to Summary Judgment on Plaintiff's Negligence Claim as the Claim is Based Upon the Same Facts Giving Rise to Plaintiff's Section 1983 Claim.</u>

Plaintiff's negligence claim cannot be founded on the same facts that give rise to his Section 1983 claim. *Gregory v. City of Newberg*, No. 3:15-CV-00473-BR, 2015 WL 5577755, at *7-8 (D. Or. Sept. 21, 2015) (quoting *Shilo v. City of Portland*, No. 04-130-AS, 2005 WL 3157563, at *1 (D. Or. Nov. 22, 2005)). Courts in this district have repeatedly held that negligence claims are barred from proceeding to trial when the negligence claim is based on the same operative facts as the Section 1983 claim. *See Daley v. McKoy*, No. 3:17-cv-00718-BR, 2018 WL 2470984, at *6-7 (D. Or. May 31, 2018); *Rodrigues v. Jackson Cty.*, No. 1:13-CV-01589-CL, 2015 WL 404577, at *3-4 (D. Or. Jan. 29, 2015); *Frank v. Cascade Healthcare Cmty., Inc.*, No. 6:11-cv-06402-AA, 2013 WL 867387, at *5 n.5 (D. Or. Mar. 6, 2013); *Woods v. Gutierrez*, No. 3:11-CV-01082-BR, 2012 WL 6203170, at *12 (D. Or. Dec. 12, 2012); *Barringer v. Clackamas Cty.*, No. CV 09-068-AC, 2010 WL 5349206, at *9 (D. Or. Nov. 22, 2010); *Hadley v. City of Beaverton*, No. CV-09-022-ST, 2010 WL 1257609, at *14 (D. Or. Feb. 16, 2010); *Whitfield v. Tri-Metro. Transp. Dist.*, No. 06-1655-HA, 2009 WL 839484, at *11 (D. Or. Mar. 30, 2009); *Saberi v. City of Portland*, No. CV 04-1396-MO, 2006 WL 2707995, at *4 (D. Or. Sept. 18, 2006). *But see Johns v. City of Eugene*, No. 6:16-cv-00907-AA, 2018 WL 634519 (D. Or. Jan. 30, 2018), *rev'd on other grounds*, 771 F. App'x 739 (9th Cir. 2019) (holding contra on false arrest claim).

Plaintiff's negligence claim is based upon the same factual allegations made in support of plaintiff's Section 1983 claim, in fact, plaintiff's Complaint explicitly relies on the allegations made in plaintiff's Section 1983 claim as the basis for his negligence claim. (Compl., ¶ 26.) As such, defendants are entitled to summary judgment on plaintiff's negligence claim.

/ / /

/ / /

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

2.    <u>Defendants Are Entitled to Summary Judgment on Plaintiff's Negligence Claim as There is No Genuine Issue of Material Fact on the Elements of Foreseeability, Causation, and Harm.</u>

Oregon has a long and important body of caselaw evaluating negligence standards when third parties cause harm to others.  In *Fazzolari*, a case involving harm caused by third-party criminal activity, the court explained that "common-law negligence imposes liability for harms of the general kind and to plaintiffs of the general class placed at risk, harms that a reasonable factfinder, applying community standards, could consider within the range of foreseeable possibilities." *Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 12-13, 734 P.2d 1326 (1987) (citing *Stewart v. Jefferson Plywood Co.*, 255 Or. 603, 609, 469 P.2d 783 (1970)).

Under a *Fazzolari* analysis, Plaintiff must establish (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was the cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.  *Graham v. Multnomah Cnty.*, 158 Or. App. 106, 109–10, 972 P.2d 1215 (1999).

Foreseeability requires proof that defendants either knew or should have known about the risk alleged and that defendant's conduct was the cause of plaintiff's foreseeable harm.  *See Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or. 434, 441, 760 P.2d 874 (1988); *Son v. Ashland Community Healthcare Services*, 239 Or. App. 495, 506, 244 P.3d 835 (2010) (quoting *Solberg v. Johnson*, 306 Or. 484, 490-91, 760 P.2d 847 (1988)).  Oregon Courts look to two general questions in making this determination.  *Piazza ex rel v. Kellim*, 271 Or. App. 490, 509, 354 P.3d 698 (2015).  First, based on the facts that the defendant knew or should have known, what general class of criminal harm was foreseeable to the defendant; and second, was the criminal harm that ultimately befell the plaintiff within that general class of harm.  *Id*.  Furthermore,

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

plaintiff must establish the defendants' conduct was a "substantial factor in producing plaintiff's injury." *Simpson v. Sisters of Charity of Providence in Oregon*, 284 Or. 547, 555, 588 P.2d 4 (1978); *see also Or. Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329, 344 n. 9, 83 P.3d 322 (2004).

Based upon the undisputed facts, plaintiff has not, nor can he, establish the requisite elements of foreseeability, causation, or harm in support of his negligence claim.  As discussed at length *supra* (pp. 12-14), defendants were not aware of any risk posed to plaintiff by Kalama. They had been sharing the same housing unit for two months without incident.  Furthermore, plaintiff never informed defendants any animosity existed prior to Kalama's assault upon him. Based upon this, it was not foreseeable to defendants that Kalama posed any foreseeable risk to plaintiff.

Additionally, the actual cause of plaintiff's injuries was Kalama's assaultive conduct. Because plaintiff cannot prove that his injury at the hands of Kalama was foreseeable, he likewise cannot prove that defendants' actions were a substantial factor in producing his injury. Furthermore, plaintiff was not injured in his cell by Kalama.  (2nd Joint Statement of Agreed Facts, ¶ 26, ECF No. 42.)  Rather, the assault occurred in the common area of the housing unit, an area that plaintiff and Kalama had been sharing for two months without incident, not as a result of plaintiff and Kalama being in the same cell together.

To the extent plaintiff's negligence claim is based upon the decision to release him from custody on the evening of September 6, 2019, there is no evidence that this decision caused plaintiff any harm.  (*See supra* pp. 16-18.)

Based upon the fact there is no evidence supporting the requisite elements of foreseeability, causation, or harm, defendants are entitled to summary judgment on plaintiff's negligence claim as a matter of law.

/ / /

/ / /

Page 24 -  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

**D.    Defendants Are Entitled to Summary Judgment on Plaintiff's Punitive Damages Claim.**

      1.    Punitive Damages Are Not Available for Plaintiff's State Tort Claims or for Plaintiff's Section 1983 Claim Against Defendant Columbia County.

During conferral for this motion, plaintiffs' counsel agreed that punitive damages are not available on the state tort claims or against defendant Columbia County on plaintiff's Section 1983 claim and will amend the Complaint to so reflect, as plaintiff must. Pursuant to ORS 30.269(1), no punitive damages are not available on plaintiff's state tort claims. As to plaintiff's Section 1982 claim, municipalities and their entities are immune from punitive damages. *Bryan v. Las Vegas Metro. Police Dep't*, 349 F. App'x 132, 135 (9th Cir. 2009) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981).)

      2.    Sergeant Townsend is Entitled to Summary Judgment on Plaintiff's Punitive Damages Claim.

In order for plaintiff's claim of punitive damages to survive summary judgment, plaintiff must establish that Sergeant Townsend's conduct was motivated by "evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Thomas v. City of Portland*, No. CIV.05-1059-ST, 2007 WL 2286254, at *17 (D. Or. Aug. 3, 2007) (citing *Smith v. Wade*, 461 U.S. 30, 47–48 (1983).

Not every intentional violation of an individual's constitutional right(s) subjects an individual defendant to punitive damages, rather, plaintiff must "make a showing beyond the threshold level of intent required for compensatory liability." *Ngo v. Reno Hilton Resort Corp.*, 140 F3d 1299, 1304 (9th Cir1998), *cert dismissed*, 526 U.S. 1142 (1999). In order to do so, plaintiff must demonstrate that Sergeant Townsend "almost certainly knew that what [s]he was doing was wrongful and subject to punishment." *Id.*

As discussed in detail *supra*, the evidence does not demonstrate that Sergeant Townsend intentionally violated plaintiff's constitutional rights, much less that she was certainly aware that

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**

what she was doing was wrongful and subject to punishment.  As such, Sergeant Townsend is entitled to summary judgment on plaintiff's claim for punitive damages.

### **CONCLUSION**

There are no factual underpinnings supporting plaintiff's claims for relief.  For the foregoing reasons, defendants are entitled to summary judgment on all of plaintiff's claims.

DATED this 19th day of April 2021.

KRAEMER & LEWIS

By:     s/ *Lauren E. Nweze*
Steven A. Kraemer, OSB No. 882476
Lauren E. Nweze, OSB No. 145218
Of Attorneys for Defendants Columbia
County and Carolyn Townsend

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3875**
**Facsimile: (503) 763-3901**