IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAYLOR SELF, an individual,                3:20-cv-00584-BR

        Plaintiff,                         OPINION AND ORDER

v.

COLUMBIA COUNTY, an Oregon
municipality, and CAROLYN
TOWNSEND,

        Defendants.


**JACOB JOHNSTUN**
Johnstun Injury Law LLC
1935 St. Helens Street
St. Helens, OR 97051
(503) 610-5399

        Attorneys for Plaintiff

**STEVEN A. KRAEMER**
**DAVID C. LEWIS**
**LAUREN E. NWEZE**
Kraemer & Lewis
P.O. Box 1469
Lake Oswego, OR 97035
(503) 763-3875

        Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Senior Judge.**

This matter comes before the Court on Defendants' Motion (#46) for Summary Judgment. The Court concludes the record is sufficiently developed, and, therefore, oral argument would not be helpful to resolve this Motion. For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion.


## <u>BACKGROUND</u>

The following facts are taken from Plaintiff's Complaint and the parties' materials related to Defendants' Motion for Summary Judgment and are viewed in the light most favorable to Plaintiff.

On June 11, 2019, Plaintiff Taylor Self underwent surgery for a broken jaw and "had a surgically wired jaw." Second Joint Statement of Agreed Material Facts (SJSAMF) at ¶ 4.

At all relevant times Plaintiff "was incarcerated at the Columbia County Jail." SJSAMF at ¶ 1. Before the relevant events Plaintiff was incarcerated in the Columbia County Jail "based [on] allegations of violations of his probation for the charge of unlawful possession of methamphetamine."

On July 16, 2019, Plaintiff's probation was revoked, and he "was sentenced with six months incarceration [in Columbia County Jail], with credits for time served, among other credits." SJSAMF at ¶ 2. Plaintiff's "scheduled release date was September 14, 2019." SJSAMF at ¶ 3.

Plaintiff was housed in the A-Pod of Columbia County Jail "due to being placed on medical isolation based [on] his jaw condition." SJSAMF at ¶ 5. "A-Pod houses a variety of male inmates [including] . . . maximum security inmates, close custody inmates, inmates on administrative segregation, inmates on disciplinary lockdown, [and] inmates who are placed on medical isolation." SJSAMF at ¶ 7. A-Pod has an upper and lower level and each level has eight cells, a "day area" with a television and tables, and a shower area. The lower level of cells are numbered AL-1 through AL-8 and the upper level of cells are numbered AT-1 through AT-8. Each cell has two bunks and can hold two inmates. Before September 6, 2019, Plaintiff was housed in cell number AT-5, and he did not have a cellmate.

On August 24, 2019, Plaintiff submitted an inmate medical request form in which he "asked to be cleared" from medical isolation on the ground that "he had full use of his mouth." SJSAMF at ¶ 8. On August 27, 2019, Plaintiff submitted a second inmate medical request form in which he stated "he should not be in the medical isolation unit any longer as his jaw injury was fully healed." SJSAMF at ¶ 9.

On August 30, 2019, "jail medical staff declined plaintiff's request to be taken out of the medical isolation unit, indicating he would be kept in the unit due to the hardware still in his mouth for his self-safety." SJSAMF at ¶ 10.

On September 6, 2019, Defendant Columbia County Sheriff's
Sergeant Carolyn Townsend advised Plaintiff that an individual in
a wheelchair was coming into Columbia County Jail and he needed a
lower-level cell.  Accordingly, Sergeant Townsend asked Plaintiff
"about having another inmate, Kelsey Kalama," who was housed on a
lower-level cell at that time, "move into [Plaintiff's] cell
. . . with him."  SJSAMF at ¶ 11.  The exchange between Sergeant
Townsend and Plaintiff was captured on Sergeant Townsend's body
camera, which shows Sergeant Townsend advising Plaintiff that
jail medical staff had cleared Plaintiff and another A-Pod inmate
to "cell together."  SJSAMF at ¶ 12.  Sergeant Townsend indicated
"who the other inmate was" by pointing "towards a cell nearby."
SJSAMF at ¶ 12.  Plaintiff immediately said "no," told Sergeant
Townsend "this would 'not be good,' and said he and the other
inmate would be 'stepping on toes.'"  SJSAMF at ¶ 12.  Plaintiff,
however, then stated "alright, whatever, fuck it."  SJSAMF at
¶ 12.  Sergeant Townsend responded:  "No, I'm not going to put
anyone in a situation to compromise their safety."  SJSAMF at
¶ 12.  Plaintiff and/or Sergeant Townsend realized at that point
that Plaintiff had been mistaken about the inmate with whom
Sergeant Townsend was proposing that Plaintiff share a cell.
Specifically, Plaintiff and Sergeant Townsend engaged in the
following exchange:

    Plaintiff:    You are saying me and him?  Me and

five?[1]

Sergeant Townsend:  Ya.

Plaintiff:     Alright, that's better than me and four.[2]

Sergeant Townsend:  Oh no I said five, ya, Kalama.

SJSAMF at ¶ 14; Ex. 1 at 2:01-2:35.  Sergeant Townsend then specifically asked Plaintiff if sharing a cell with Kalama was "good," and Plaintiff responded "ya."  Sergeant Townsend stated: "Oh, did you think it was you and Nelson?"  Plaintiff responded "ya."  SJSAMF at ¶ 14; Ex. 1 at 2:01-2:35.  Plaintiff did not express any concerns about sharing a cell with Kalama.  Plaintiff testified at deposition that this was the only conversation he had with Sergeant Townsend or any other Columbia County Jail employee regarding the sharing of a cell with Kalama.  In addition,

> [a]t the time the decision to place plaintiff and Kalama in the same cell was made, they had been housed within the same housing unit for approximately two months.  There had never been any prior verbal or physical altercations between the two, nor had any written reports, complaints, or grievances been filed by plaintiff regarding any issues or animosity with Kalama.

SJSAMF at ¶ 15.

After Sergeant Townsend directed Kalama to move into the

---

[1] The record reflects "five" was Kalama.

[2] The record reflects "four" was a different inmate identified as Nelson.

cell with Plaintiff, Kalama "began collecting his possessions and moving them into" Cell AT-5.  SJSAMF at ¶ 17.  While Kalama moved his possessions Plaintiff was on the lower level of A-Pod "walking around the day area" and watching television.  SJSAMF at ¶ 18.  At approximately 4:45 p.m. Kalama "observed several open milk cartons" in Cell AT-5.  SJSAMF at ¶ 20.  Kalama "walked out of the cell to the railing of the second floor and requested . . . [P]laintiff (who was still on the ground floor in the day area) get rid of the milk cartons."  SJSAMF at ¶ 20.  Plaintiff responded "no" and stated "if Kalama did not like it, he could 'roll up.'"  SJSAMF at ¶ 21.  Kalama "perceiv[ed] [P]laintiff's response as disrespectful, . . . quickly descended the stairs [to the day-room area of A-Pod], approached [P]laintiff, and . . . punched [P]laintiff on the right side of his face, in the jaw area."  SJSAMF at ¶ 22.  Plaintiff "fell to the floor . . ., got back on his feet, [and] exchanged words with Kalama, but [Plaintiff] did not physically retaliate against Kalama."  SJSAMF at ¶ 23.  "After this exchange, [P]laintiff briefly resumed walking around the day area  . . . [until] jail staff entered the unit within two minutes . . . to determine what occurred."  SJSAMF at ¶¶ 27-28.

Jail staff interviewed Plaintiff about the incident, at which time Plaintiff told jail staff "that his jaw was hurting and [he] believed it may be broken again."  SJSAMF at ¶ 29.  Jail

staff advised Plaintiff that they would request "medical staff
come check him out as soon as possible." SJSAMF at ¶ 29.

Plaintiff testified at deposition that he believed he was
assessed by a nurse at approximately 8:00 p.m., but he was not
sure of the time. Plaintiff also testified the nurse was "good"
and "she really cared," but she was "not [a] surgeon[], so she
couldn't touch [him]." Decl. of Jacob Johnstun, Ex. 2 at 39.
Plaintiff stated the nurse looked in his mouth, and Plaintiff
showed her "how much [he] could move [his] jaw." Johnstun Decl.,
Ex. 2 at 49. After Plaintiff told the nurse "what happened she
[said] okay, and sent [him] back to [his] cell." Johnstun Decl.,
Ex. 2 at 39. The nurse did not tell Plaintiff "anything about
treatment." Johnstun Decl., Ex. 2 at 40. The record reflects
Plaintiff did not receive any medication or diagnosis from the
nurse. Plaintiff testified neither the nurse nor any other
medical staff told him "anything about why they couldn't treat
[him]." Johnstun Decl., Ex. 2 at 50.

Shortly before 10:30 p.m. on September 6, 2019, Plaintiff
was advised he was being released from Columbia County Jail
"through Sergeant Townsend's orders." Johnstun Decl., Ex. 2 at
51; SJSAMF at ¶ 31. Plaintiff signed a Conditional Release
Agreement and was told by jail staff that he was "on revoke, and
[to] go to . . . the probation office [the following day] first
thing in the morning or else [he would] be in trouble." Johnstun

Decl., Ex. 2 at 51.  Plaintiff was not given any reason why he was being released, and he did not ask for a reason.  Plaintiff testified at deposition that the "deputy [who] gave [him his] paperwork may have said . . . [he] need[ed] to go to the doctor or something," but Plaintiff "was never provided a reason" for his early release.  Johnstun Decl., Ex. 2 at 52-53.

After he was released, Plaintiff walked a mile to the residence of his mother's friend, Miranda Neveau, and arrived at approximately 11:00 p.m.  Plaintiff texted his mother and stepfather and requested they drive him to the hospital. Plaintiff's mother drove him to the emergency department at Oregon Health Sciences University (OHSU), and Plaintiff arrived there at 12:56 a.m.  Plaintiff reported pain "in his left jaw [that was] dull, constant, and moderate in severity."  Decl. of Lauren Nweze, Ex. 5 at 6.  Plaintiff rated his pain between two and three on a scale of one to ten (with ten being the most severe).  Plaintiff underwent a "CT max-face which showed L mandibular rami fracture that was minimally displaced."  Nweze Decl., Ex. 5 at 8.  A "Plastic Surgery [medical professional] recommended [outpatient] operative fixation, and liquid diet in the meantime with mouth wash after meals."  *Id*. at 9.

Plaintiff was discharged in stable condition from OHSU on September 7, 2019, at 6:24 a.m.

On September 20, 2019, Plaintiff was seen at Legacy Emanuel

NeuroTrauma Clinic for a follow-up visit to evaluate treatment for his jaw. Plaintiff "decided he would undergo an open reduction internal fixation procedure and have the hardware in his jaw removed." SJSAMF at ¶ 39. On September 26, 2019, Plaintiff underwent the open reduction internal fixation procedure and had the hardware in his jaw removed. On September 27, 2019, "Plaintiff was discharged from Legacy Emanuel . . . upon his request." Nweze Decl., Ex. 5 at 10.

On April 9, 2020, Plaintiff filed a Complaint in this Court against Columbia County and Sergeant Townsend in which he brings claims against both Defendants (1) pursuant to 42 U.S.C. § 1983 for deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution, (2) for intentional and/or reckless infliction of emotional distress, and (3) for negligence.

On April 19, 2021, Defendants filed a Motion for Summary Judgment in which they seek summary judgment on all of Plaintiff's claims. The Court took the matter under advisement on May 24, 2021.


## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United*

*States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a genuine dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id*. "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-

1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## DISCUSSION

Defendants move for summary judgment on Plaintiff's claims on the grounds that (1) Plaintiff has not established Defendants violated Plaintiff's rights under the Fourteenth Amendment; (2) Plaintiff has not established Defendants were deliberately indifferent to his safety in violation of the Eighth Amendment; (3) Plaintiff has not established Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment; (4) Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claim; (5) Plaintiff has not established Defendants are liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978);

11 - OPINION AND ORDER

(6) Plaintiff has not established there is a genuine dispute of material fact as to his claims for emotional distress; (7) Plaintiff has not established there is a genuine dispute of material fact as to his negligence claim; and (8) Plaintiff has not established there is a genuine dispute of material fact as to his punitive-damages claim.

## I.    Plaintiff's Fourteenth Amendment Claim

Plaintiff alleges Defendants violated his rights under the Eighth and Fourteenth Amendments when they failed to protect him from assault by Kalama and when they were deliberately indifferent to Plaintiff's serious medical needs.  At the time of the events at issue Plaintiff was serving a custodial sentence following a criminal conviction.  Plaintiff's constitutional claims for failure to protect and deliberate indifference to serious medical needs, therefore, arise only under the Eighth Amendment rather than under the Fourteenth Amendment.  *See Sandoval v. Cty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) ("For inmates serving custodial sentences following a criminal conviction, that right is part of the Eighth Amendment's guarantee against cruel and unusual punishment.  However, pretrial detainees have not yet been convicted of a crime and therefore are not subject to punishment by the state.  Accordingly, their rights arise under the Fourteenth Amendment's Due Process Clause.").

The Court, therefore, grants Defendants' Motion for Summary Judgment as to Plaintiff's claim against Defendants for violation of his rights under the Fourteenth Amendment.

## II. Plaintiff's Eighth Amendment Claim for Failure to Protect

Plaintiff alleges Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when Sergeant Townsend failed to protect Plaintiff from Kalama.

### A. The Law

The Supreme Court held in *Farmer v. Brennan* that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." 511 U.S. 825, 833 (1994)(quotation omitted)). The Court noted:

> Having incarcerated persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct, [and] having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. . . . Prison conditions may be "restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objectiv[e] any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Id*. at 833-34 (internal quotations and citations omitted). Nevertheless, "every injury suffered by one prisoner at the hands of another [does not] translate[] into constitutional liability for prison officials responsible for the victim's safety." *Id*.

at 834.  In *Farmer* the Supreme Court specifically rejected the petitioner's argument that "a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it."  *Id*. at 841-42.  The Court concluded:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id*. at 837 (internal citations omitted).  "Specifically, a prison official violates an inmate's Eighth Amendment right only if that official is 'deliberately indifferent' — in other words, if the official is subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by failing to respond reasonably."  *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citing *Farmer*, 511 U.S. at 837, 844-45).

## B.  Analysis

As noted, Plaintiff asserts Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when Sergeant Townsend failed to protect Plaintiff

from Kalama.  Defendants contend Plaintiff has not alleged facts sufficient to establish that Sergeant Townsend was subjectively aware Kalama posed an excessive risk to Plaintiff's safety or that Sergeant Townsend deliberately disregarded that risk.

Defendants note the record reflects Plaintiff and Kalama had been living in A-Pod for two months before the incident; they had never had any prior verbal or physical altercations; and there were not any written reports, complaints, or grievances filed by Plaintiff or Kalama regarding animosity or issues between them.  In addition, Sergeant Townsend's body-camera footage reflects when Plaintiff advised Sergeant Townsend that it would "not be good" and "they would be 'stepping on toes,'" Plaintiff believed at the time that Sergeant Townsend was asking him about sharing a cell with Nelson.  When the misunderstanding was cleared up and Plaintiff realized Sergeant Townsend was asking about sharing a cell with Kalama, Plaintiff said it was "all good" and he did not express any further concerns.

Plaintiff asserts Kalama has a "violent and aggressive character" that Sergeant Townsend should have been aware of because at the time of the incident Kalama was on medical isolation due to the fact that he broke his hand when he punched a telephone.  Kalama explained he "broke his right hand because his phone card did not work so he punched a phone when he could

not make a phone call." Johnstun Decl., Ex. 6 at 2. Plaintiff, however, does not point to any evidence that shows Sergeant Townsend knew how Kalama injured his hand. In addition, even if Sergeant Townsend knew how Kalama injured his hand, Plaintiff does not point to any evidence that Kalama was known to be violent or assaultive towards people. The Ninth Circuit has made clear that "to be liable, [under the Eighth Amendment for deliberate indifference] the official 'must have more than a mere suspicion that an attack will occur.'" *Green v. Gilbert*, 830 F. App'x 543 (9th Cir. 2020)(quoting *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986)). *See also Mickens v. Stafford Creek Correction Ctr.*, 132 F. App'x 691, 692–93 (9th Cir. 2005)(court affirmed the district court's grant of summary judgment for the defendant on the plaintiff's Eighth Amendment failure-to-protect claim noting "[a]lthough [the plaintiff] attests that he told correctional officer Van Ogle on one occasion that he generally feared an assault, he admits that he did not provide the name of a specific person who threatened him, and did not request protective custody."). Here Plaintiff does not point to any evidence from which it could be inferred that Sergeant Townsend had any suspicion that Kalama would hit Plaintiff.

The Court concludes on this record that Plaintiff has not established a genuine dispute of material fact exists as to whether Sergeant Townsend was subjectively aware of or

disregarded a substantial risk of serious harm to Plaintiff from Kalama.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment claim for failure to protect Plaintiff from Kalama.

## III. Plaintiff's Eighth Amendment Claim for Denial of Adequate Medical Care

Plaintiff alleges Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment when Sergeant Townsend released him from Columbia County Jail without treating his injury.

### A.    The Law

Deliberate indifference to serious medical needs is a cognizable claim for violation of the Eighth Amendment proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  *See also Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014)(same).

> To sustain [a] deliberate indifference claim, [a plaintiff must] meet the following test:  "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."

*Peralta v. Dillard*, 704 F.3d 1124, 1127 (9th Cir. 2013)(quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).  To satisfy

the second prong (*i.e.,* that defendant's response to the need was deliberately indifferent), a plaintiff must show there was "'(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm [was] caused by the indifference.'" *Id.* (quoting *Jett*, 439 F.3d at 1096). Deliberate indifference may be established by showing that prison officials denied, delayed, or intentionally interfered with medical treatment or by the way prison officials provided medical care. *Jett*, 439 F.3d at 1096.

"Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)(citation omitted). *See also Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012)("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

**B.  Analysis**

As noted, a "plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096 (quotations omitted).

Plaintiff alleges Defendants were deliberately indifferent to Plaintiff's serious medical needs when they

released him from Columbia County Jail without treating his injury. Defendants, in turn, contend Plaintiff has not established a genuine dispute of material fact exists as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs. Specifically, Defendants contend Plaintiff has not established he was suffering a serious medical need and even if Plaintiff was suffering from a serious medical need, Sergeant Townsend was not deliberately indifferent to that need.

As noted, Defendants contend Plaintiff has not established he was suffering a "serious medical need" when he was released from Columbia County Jail. Defendants allege the record of Plaintiff's treatment at OHSU does not indicate any failure to treat Plaintiff's injury at the jail resulted in further significant injury to Plaintiff or in an unnecessary and wanton infliction of pain. Specifically, Defendants note Plaintiff reported pain "in his left jaw [that was] dull, constant, and *moderate* in severity" when he arrived at OHSU. Nweze Decl., Ex. 5 at 6 (emphasis added). Plaintiff rated his pain between two and three on a scale of one to ten (with ten being the most severe). Defendants also note Plaintiff's CT scan reflected "L mandibular rami fracture that was minimally displaced." Nweze Decl., Ex. 5 at 8. Finally, Defendants point out that a "Plastic Surgery [medical professional] recommended [outpatient] operative

fixation, and liquid diet in the meantime with mouth wash after meals." Nweze Decl., Ex. 5 at 9.

Although Plaintiff reported at OHSU that his pain was at a level two or three and described his pain as "moderate," the record reflects Defendants did not take any action to mitigate or to attempt to relieve Plaintiff's pain before he was released. In fact, Plaintiff was not even offered or provided with over-the-counter medications or an ice pack. In addition, although Plaintiff was not seen by doctors at OHSU until more than eight hours after Kalama struck him, the record reflects Plaintiff still had "swelling to the left side of his face around his mandible [that was] tender to palpation." Nweze Decl., Ex. 5 at 8. OHSU medical staff noted Plaintiff's "fracture is displaced, impacted and he has malocclusion [that] will require outpatient operative fixation." Nweze Decl., Ex. 5 at 22. Although Plaintiff was discharged from OHSU in stable condition, he was given ibuprofen for pain at OHSU and placed on a liquid diet. Viewing the facts in the light most favorable to Plaintiff, the Court concludes on this record that Plaintiff has established a genuine dispute of material fact exists as to whether he had serious medical needs before he was released from Columbia County Jail.

Defendants assert even if Plaintiff has established he had a "serious medical need" while he was at the jail, Sergeant

Townsend was not deliberately indifferent to that need as evidenced by the fact that Plaintiff was seen by a nurse who Plaintiff described as "great" and who "really cared." The record, however, reflects the nurse did not actually diagnose or treat Plaintiff. Plaintiff testified at deposition that the nurse looked in his mouth and Plaintiff showed her "how much [he] could move [his] jaw," but the nurse merely "nodd[ed] [her head] like yeah" and said "okay." Johnstun Decl., Ex. 2 at 39-40. The nurse did not tell Plaintiff "anything about treatment." Plaintiff also testified neither the nurse nor any other medical staff told him "anything about why they couldn't treat [him]." Defendants do not point to any evidence that contradicts Plaintiff's testimony, and neither party submitted to the Court any record of the nurse's visit nor of the nurse providing Plaintiff with any medication or a treatment plan. Viewing the evidence in the light most favorable to Plaintiff, the Court concludes it cannot infer from this record that the nurse provided Plaintiff with adequate medical treatment for his injury. *See, e.g., Thibodeaux v. White*, No. 320CV05110BHSJRC, 2021 WL 1176855, at *7 (W.D. Wash. Feb. 4, 2021), *report and recommendation adopted*, No. C20-5110 BHS-JRC, 2021 WL 1172144 (W.D. Wash. Mar. 29, 2021)(finding the defendant delayed, denied, or provided inadequate medical care when she "failed to provide any medication or further treatment [to the plaintiff] or to call

another provider, instead returning plaintiff to his unit and advising him to sign up for sick call the next day.").

Defendants also assert Sergeant Townsend was not deliberately indifferent to Plaintiff's medical needs because Plaintiff "was released to obtain the medical care that the nurse could not provide." Defs.' Reply at 10-11. The record, however, is unclear as to why Plaintiff was released. For example, Sergeant Townsend testified at deposition that she made the decision to release Plaintiff eight days before his scheduled release date, but she did "not recall [her] thought process" as to why she made that decision. Johnstun Decl., Ex. 9 at 28-29. Moreover, Sergeant Townsend could not recall whether her decision "had anything to do with the jail's inability to treat [Plaintiff's] injuries at that time." *Id.* at 29. Later Sergeant Townsend testified Plaintiff's release was "a medical release," but she did not recall any member of the jail medical staff recommending Plaintiff's release and then she reiterated she did not "recall that night clearly." Johnson Decl., Ex. 2 at 34-35. Sergeant Townsend also testified she did not remember being "made aware that" Plaintiff thought his jaw might be broken or that he "had any pain in his jaw when [she] released him." *Id.* at 37. When asked why she decided to release Plaintiff in light of her testimony that she did not know he was in pain or that he believed he had rebroken his jaw, Sergeant Townsend testified

again that she did not "recall her thought process" or "why [she] did . . . that release." Tr. 38. As noted, Plaintiff testified at deposition that he also did not know why he was being released. When asked if anyone "from the jail said [he] was being released so [he] could obtain medical treatment," Plaintiff responded: "[T]he deputy [who] gave [him his release] paperwork *may* have said something about it. She *may* have said I need to go to the doctor or something." Johnstun Decl., Ex. 2 at 52-53 (emphasis added). Plaintiff, however, then reiterated he "was never provided a reason" for his early release. *Id*. at 53. In addition, as noted, the record does not contain any Columbia County Jail medical records for Plaintiff; any record of any treatment by jail medical staff for Plaintiff's injuries on September 6, 2019; or any record of medical staff recommending Plaintiff's release for treatment elsewhere. At best, the record indicates a genuine dispute of material fact exists as to whether Plaintiff was released to obtain medical care.

Even if the record supported Defendants' assertion that Plaintiff was released to obtain medical care that the jail could not provide, that fact does not end the inquiry. The Court must evaluate whether Sergeant Townsend's decision to release Plaintiff from custody to obtain medical treatment constitutes deliberate indifference to Plaintiff's serious medical needs while he was in Columbia County Jail. At least one court has

concluded an inmate's release under similar circumstances was sufficient to establish deliberate indifference.  In *Haley v. County of Del Norte, California,* the plaintiff was an inmate in Del Norte County Jail when he was assaulted by another inmate. No. C 08-04572 WHA, 2009 WL 3568897, at *1 (N.D. Cal. Oct. 30, 2009).  Plaintiff was examined by jail medical staff, provided with pain medication and an ice pack, and driven to the emergency room by a deputy sheriff.  Medical staff in the emergency room determined Plaintiff "had multiple fractures to his orbital bones on both sides of his face" and that "he was going to need surgery urgently."  *Haley*, 2009 WL 3568897, at *1.  The sheriff's deputy "relayed this information to Sergeant Gary Potter," who, in turn, "spoke to defendant Commander Bill Steven to inform him of the assault and [to] recommend plaintiff be released from custody. At the direction of defendant Steven, plaintiff was then released from custody after signing an Agreement to Appear in an Idaho court."  *Id.*  After his release the plaintiff sought treatment, but he had "difficulty finding a doctor that would provide treatment . . . as he had no health insurance" and Commander Steven declined to pay for the plaintiff's medical care because Plaintiff "had been released from custody."  *Id.*  The plaintiff brought an action pursuant to 42 U.S.C. § 1983 in which he alleged, among other things, that Commander Steven was deliberately indifferent to his serious medical needs when he

decided "to release plaintiff from custody after learning that surgery would be required." *Haley*, 2009 WL 3568897, at *5. Commander Steven asserted there was not any evidence from which a fact-finder could determine he was deliberately indifferent, but the court "disagreed." *Id*. The court found a genuine dispute of material fact existed as to whether Commander Steven released Plaintiff "to allow plaintiff to receive medical care for his injuries" or instead "to avoid the costs and logistical hurdles of dealing with an injured inmate." *Id*., at *6. The court also found the law clearly required the defendant to provide the plaintiff with medical care under the circumstances:

> *Estelle* clearly states that the government has an "obligation to provide medical care for prisoners." *Estelle*, 429 U.S. at 103. Defendant Steven may have acted in good faith by releasing plaintiff from custody — he may have believed that releasing plaintiff would assist him in obtaining medical care. He will have an opportunity to show his good faith at trial in an attempt to demonstrate that he was not deliberately indifferent to plaintiff's medical needs. But under *Estelle*, defendant Steven had a clear obligation to *provide* medical care for plaintiff — releasing plaintiff to fend for himself is not the same thing as providing care.

*Haley*, 2009 WL 3568897, at *8 (emphasis in original). The court found unpersuasive the defendant's argument that "the constitutional duty to provide medical care to an inmate exists because an inmate is unable to care for himself"; when the "plaintiff was released . . . he was . . . able to care for himself"; and, therefore, "once plaintiff was released, the

rationale for providing him with medical care — his incarceration
— no longer existed." *Id.*, at *8. The court pointed out that
the defendant's argument "ignores that plaintiff *was a prisoner
when his medical needs arose*. Defendant Steven in effect asks us
to modify the Supreme Court's holding in *Estelle* — to add an
option for releasing a prisoner instead of providing him with
medical care." *Haley*, 2009 WL 3568897, at *8 (emphasis in
original). Accordingly, the court denied the defendant's motion
for summary judgment as to the plaintiff's claim for denial of
adequate medical care.

       Here, as in *Haley,* a genuine dispute of material fact
exists as to the reason why Sergeant Townsend released Plaintiff.
As noted, Defendants assert Sergeant Townsend released Plaintiff
to obtain medical care, but the record does not clearly support
that assertion. As the court noted in *Haley*, the *Estelle* court
held the government has an obligation to provide medical care for
prisoners, but the *Estelle* court did not rule that the government
may either provide medical care for an inmate or release the
inmate to find that care on his own. Here Plaintiff, like the
plaintiff in *Haley*, was a prisoner when his medical needs arose.
The *Estelle* court, therefore, required Defendants to provide him
with medical care instead of merely releasing him to find his own
care.

       The Court, therefore, concludes on this record that

Defendants have not established they are entitled to summary judgment as to Plaintiff's claim for denial of adequate medical care. Accordingly, the Court denies Defendants' Motion for Summary Judgment as to that claim.

## IV. Qualified Immunity for Sergeant Townsend

Defendants assert Sergeant Townsend is entitled to qualified immunity for Plaintiff's Eighth Amendment claim for denial of adequate medical care.

### A. The Law

"Qualified immunity shields government officials from civil liability [when] 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Wright v. Beck*, 981 F.3d 719, 726 (9th Cir. 2020) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "The protection 'attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wright*, 981 F.3d at 726 (quoting *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018)). "The reasonableness of the officer's conduct is judged against the backdrop of the law at the time of the conduct." *Wright*, 981 F.3d at 726 (quotation omitted).

To determine whether an officer is entitled to qualified immunity courts apply "'a two-part analysis.'" *Young v. Hauri*, No. 19-36098, 2021 WL 2206520, at *1 (9th Cir. June 1,

2021)(quoting *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir.
2017)). Courts "must decide (1) whether the plaintiff's alleged
facts 'make out a violation of a constitutional right' and
(2) 'whether the right at issue was clearly established at the
time of defendant[s'] alleged misconduct.'" *Young*, 2021 WL
2206520, at *1 (quoting *Frudden*, 877 F.3d at 831). Although the
Ninth Circuit does "'not require a case directly on point, . . .
existing precedent must have placed the statutory or
constitutional question beyond debate.'" *Wright*, 981 F.3d at 727
(quoting *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011)).
"'The Supreme Court has made clear that officials can still be on
notice that their conduct violates established law even in novel
factual circumstances.'" *Wright*, 981 F.3d at 727 (quoting *Hope
v. Pelzer*, 536 U.S. 730, 741 (2002)). The Ninth Circuit has "not
hesitated to deny qualified immunity to officials in certain
circumstances, even without a case directly on point." *Wright*,
981 F.3d at 735.

Although it is clear that the *Estelle* court ruled the
government has an "obligation to provide medical care for
prisoners" and that Plaintiff was a prisoner at the time his
medical needs arose, there are genuine disputes of material fact
as to the reason for Plaintiff's release and as to whether
Plaintiff's medical needs were sufficiently severe to satisfy the
deliberate-indifference standard. On this record the Court,

therefore, concludes genuine disputes of material fact prohibit the Court from resolving the issue of qualified immunity. Accordingly, the Court denies Defendants' Motion for Summary Judgment as to the issue of qualified immunity as it might apply to Plaintiff's Eighth Amendment claim for denial of adequate medical care.

## V.   Plaintiff's *Monell* Claim

In his Response to Defendants' Motion for Summary Judgment Plaintiff asserts Defendant Columbia County is "liable pursuant to *Monell* [*v. Department of Social Services of City of New York,* 436 U.S. 658 (1978),*]* because its policies, customs, and a final policymaker contributed to Plaintiff's injuries."  Pl.'s Resp. at 5.

### A.   The Law

In *Monell* the Supreme Court held municipalities are "persons" subject to damages liability under § 1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort."  436 U.S. at 691.  The Supreme Court made clear that the municipality itself must cause the constitutional deprivation and that a governmental entity may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*.  *Id*.  *See also City of Canton v. Harris*, 489 U.S. 378, 385 (1989)(requiring "a direct causal link between a municipal policy or custom and the alleged

constitutional deprivation"). In addition, the Ninth Circuit has
held even when an individual government actor is "entitled to
qualified immunity, the [government entity] may still be subject
to municipal liability for causing a constitutional violation
under 42 U.S.C. § 1983." *Trevino v. Gates*, 99 F.3d 911, 918 (9th
Cir. 1996), *holding modified on other grounds by Navarro v.
Block*, 250 F.3d 729 (9th Cir. 2001).

The Ninth Circuit has held a plaintiff may establish
municipal liability under *Monell* in one of three ways: (1) the
officer "committed the alleged constitutional violation pursuant
to a formal governmental policy or a longstanding practice or
custom which constitutes the standard operating procedure of the
local governmental entity," (2) "the individual who committed the
constitutional tort was an official with final policy-making
authority," or (3) "an official with final policy-making
authority ratified a subordinate's unconstitutional decision or
action and the basis for it." *Gillette v. Delmore*, 979 F.2d
1342, 1346-47 (9th Cir. 1992). *See also Heath v. City of Desert
Hot Springs*, No. 13-55946, 2015 WL 3942839, at *3 (9th Cir.
June 29, 2015)(same).

B. **Failure to Plead a *Monell* Claim**

Plaintiff did not allege a *Monell* claim in his
Complaint. The following is the entirety of Plaintiff's claim
for violation of the Eighth Amendment:

Section 1983, a part of the Civil Rights Act of
1871, prohibits any person acting under color of
state law to deprive any United States citizen of
the rights, privileges and immunities secured by
the Constitution of the United States. Among the
rights protected by this section is the right
under the Eighth . . . Amendment[] of the
Constitution to be free from the infliction of
cruel and unusual punishments.

Defendants acted under the color of state law in
engaging in the activities described above to
deprive Plaintiff, a citizen of the United States,
of the rights secured to him by the Eighth
. . . Amendment[] to the Constitution to be free
from the infliction of cruel and unusual
punishments.

As an inmate under the control and protection of
Defendants, Plaintiff had the right to not be
ordered into dangerous circumstances, against
physician orders, when serious injury was
foreseeable.

As an inmate under the control and protection of
Defendants, Plaintiff had the right to be offered
basic medical assistance and/or a medical
transport once he had been injured as a proximate
cause of Defendants' deliberate indifference.

Defendants violated Plaintiff's Eighth . . .
Amendment rights when they caused him to suffer a
broken jaw in the background of a recent jaw
surgery, and then failed to aid or assist him in
obtaining basic medical care.

Compl. at ¶¶ 14-19. Plaintiff does not allege in his Complaint

any formal policy or longstanding practice or custom that

constitutes the standard operating procedure of Columbia County

Sheriff's Office, that Sergeant Townsend was an official with

final policymaking authority," or that "an official with final

policy-making authority ratified" Sergeant Townsend's decision or

action.

Plaintiff also did not move to amend his Complaint to add a *Monell* claim or to plead any facts that would support such a claim. In addition, the Ninth Circuit has made clear that a plaintiff may not "effectively amend its Complaint by raising a new theory of standing in its response to a motion for summary judgment." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010). *See also Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.")(quotation omitted)). The Court, therefore, concludes Plaintiff did not bring a *Monell* claim and that Plaintiff's Response to Defendants' Motion for Summary Judgment is not an appropriate procedural vehicle to bring such a claim.

### C. Analysis

Nevertheless, even if the Court construed Plaintiff's Response to Defendants' Motion for Summary Judgment as a valid request to amend his Complaint, the Court concludes Plaintiff has not established a genuine dispute of material fact exists as to Columbia County's liability pursuant to *Monell*.

### 1. No Liability on Failure to Protect Claim

The Supreme Court has held

neither *Monell* . . . nor any other of our

> cases authorizes the award of damages against
> a municipal corporation based on the actions
> of one of its officers when . . . the officer
> [did not] inflict[] [any] constitutional
> harm.  If a person has suffered no
> constitutional injury at the hands of the
> individual . . . officer, the fact that the
> departmental regulations might have
> authorized the use of constitutionally
> excessive force is quite beside the point.

*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  The

Court has already concluded Plaintiff has not established

Sergeant Townsend failed to protect him from Kalama in violation

of his Eighth Amendment rights.  The Court, therefore, also

concludes Plaintiff has not established a *Monell* claim against

Columbia County for allegedly failing to protect him.

Accordingly, the Court grants Defendants' Motion

for Summary Judgment as to any *Monell* claim by Plaintiff relating

to Columbia County's alleged failure to protect Plaintiff from

Kalama.

## 2.    Policymaking Authority

As noted, the Ninth Circuit has held a plaintiff

may establish municipal liability under *Monell* by showing "the

individual who committed the constitutional tort was an official

with final policy-making authority" or that "an official with

final policy-making authority ratified a subordinate's

unconstitutional decision or action and the basis for it."

*Gillette*, 979 F.2d at 1346-47.

Although Plaintiff asserts in his Response that

Sergeant Townsend has final policymaking authority for the
Columbia County Sheriff's Office, Plaintiff does not cite any
authority to support his position.  Defendants, on the other
hand, assert the Columbia County Sheriff is the final policymaker
for the Columbia County Sheriff's Office.  Defendants rely on the
Declaration of Columbia County Sheriff Brian Pixley to support
their assertion.  In his Declaration Sheriff Pixley states:

> I am the final policy maker for the Columbia
> County Sheriff's Office.  I have adopted extensive
> policies for the Columbia County Jail which set
> out the general framework for operation of the
> jail.  The jail shift supervisors or sergeants are
> responsible for administrating those policies
> under the circumstances confronting them.  I have
> the authority to review their actions to determine
> compliance with jail policies under the
> circumstances that confronted them.  I have never
> granted shift supervisors or sergeants the
> authority to set jail policy for the Columbia
> County Sheriff's Office.

Decl. of Brian Pixley at ¶ 2.  In addition, the Court notes
Oregon Revised Statutes § 169.320(1) provides:  "E]ach county
sheriff has custody and control of all persons legally committed
or confined in the county local correctional facility of the
county of the sheriff," and the sheriff may adopt policies
regulating the conditions of confinement "[u]nder the direction
of the county court or board of county commissioners of the
county" in which the jail is located.  *See also* Or. Rev. Stat.
§ 169.220 (establishing the duties of the county court or board
of county commissioners with respect to care of county

prisoners).  In Oregon, therefore, "the county sheriff, the
county court, and the county commission have the final authority
to establish municipal policy with respect to the custody and
control of detainees."  *Hernandez v. Marion Cty.*, No. 3:15-
CV-01070-AA, 2017 WL 6029605, at *4 (D. Or. Dec. 3, 2017).
Although the Supreme Court has held officials with final
policymaking authority may delegate that authority to a
subordinate, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130
(1988), Sheriff Pixley specifically states he has not delegated
his policymaking authority to supervisors or to sergeants.  On
this record, therefore, the Court concludes Sergeant Townsend did
not have final policymaking authority for the Columbia County
Sheriff's Office.

Moreover, the record does not reflect Sheriff
Pixley ratified Sergeant Townsend's decision to release Plaintiff
on September 6, 2019.

### 3. Formal Policy, Longstanding Practice, or Longstanding Custom

As noted, the Ninth Circuit has held a plaintiff
also may establish municipal liability under *Monell* by showing
the officer "committed the alleged constitutional violation
pursuant to a formal governmental policy or a longstanding
practice or custom which constitutes the standard operating
procedure of the local governmental entity."  *Gillette*, 979 F.2d
at 1346–47.

Plaintiff does not contend Columbia County Sheriff's Office has an official policy to deny inmates medical care. Instead Plaintiff asserts in his Response that "on custom and practice . . . Columbia County endorsed within its jail officers to not give meaningful assistance while an inmate is in serious medical need and . . . this contributed to the jail's decision to release [Plaintiff] . . . with a broken jaw rather than to offer him a medical transport." Pl.'s Resp. at 7.

"Absent a formal governmental policy, [the plaintiff] must show a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" *Trevino*, 99 F.3d at 918 (quoting *Gillette*, 979 F.2d at 1346-47). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled . . . policy.'" *Trevino*, 99 F.3d at 918 (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918. *See also Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir. 1988)(holding two incidents were not sufficient to establish custom); *Davis v. Ellensburg*, 869 F.2d 1230 (9th Cir. 1989)(the manner of one arrest was insufficient to establish policy). Plaintiff points

to only three incidents to support his assertion that Columbia County Sheriff's Office has a custom or policy of failing or refusing to provide meaningful assistance to inmates who have serious medical needs.  One of these incidents, however, involved transporting an inmate by ambulance to the hospital, which cuts against Plaintiff's assertion that Columbia County Sheriff's Office has a custom or practice not to transport inmates to the hospital to treat their serious medical needs.  In addition, Defendants point out that Plaintiff only identifies three incidents out of thousands of inmates' requests for medical services.  Specifically, in 2017 the Columbia County Jail housed 2,655 inmates who made 11,933 requests for medical services.  Pixley Decl. at ¶ 3.  In 2018 the jail housed 1,936 inmates who made 15,289 requests for medical services.  *Id.*  In 2019 the jail housed 2,833 inmates who made 24,034 requests for medical services.  The Court concludes no rational trier-of-fact would find three incidents out of thousands of requests for medical treatment sufficient to establish a "persistent and widespread" custom that constitutes a "permanent and well settled . . . policy."

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to any *Monell* claim made by Plaintiff.

## VI.  Plaintiff's Claims for Infliction of Emotional Distress

Plaintiff brings claims for reckless and/or intentional

infliction of emotional distress.  Plaintiff asserts Defendants'

conduct when they failed to protect him from Kalama and released

him from the jail without providing medical care was "extreme and

outrageous and beyond the scope of conduct that should be

tolerated by citizens in a democratic and civilized society."

Plaintiff contends Defendants committed these acts with the

"intent to inflict severe mental and emotional distress" on

Plaintiff.

## A.    Reckless Infliction of Emotional Distress

Defendants point out in their Motion for Summary

Judgment that reckless infliction of emotional distress is not a

cognizable claim under Oregon law.  Plaintiff does not address

this issue in his Response to Defendants' Motion.

Courts have made clear that "'there is no cognizable

claim for the reckless infliction of emotional distress under the

laws of the State of Oregon.'"  *Ayala v. Dhaliwal*, No. 03:12-

CV-00578-HZ, 2013 WL 957590, at *1 (D. Or. Mar. 11, 2013)(quoting

*Snead v. Metropolitan Prop. & Cas. Ins. Co.*, 909 F. Supp. 775,

779 (D. Or. 1996)).

Accordingly, the Court grants Defendants' Motion for

Summary Judgment as to Plaintiff's claim for reckless infliction

of emotional distress.

## B.    Intentional Infliction of Emotional Distress

An [intentional infliction of emotional distress]
claim requires plaintiff to prove three elements:

> (1) that defendant[ ] intended to cause plaintiff
> severe emotional distress or knew with substantial
> certainty that [her] conduct would cause such
> distress; (2) that defendant[ ] engaged in
> outrageous conduct, *i.e.*, conduct extra-ordinarily
> beyond the bounds of socially tolerable behavior;
> and (3) that defendant['s] conduct in fact caused
> plaintiff severe emotional distress.

*McManus v. Auchincloss*, 271 Or. App. 765, 781 (2015).

### 1.    Failure to Protect

Plaintiff bases his claim for intentional infliction of emotional distress in part on Sergeant Townsend's decision to have Kalama share a cell with Plaintiff.  Defendants assert Plaintiff fails to establish that Sergeant Townsend intended to cause Plaintiff emotional distress or knew with substantial certainty that her conduct would cause Plaintiff emotional distress.

As noted, when Plaintiff initially said it would not be a good idea for him to share a cell with "five" and then said "alright, whatever, fuck it," Sergeant Townsend stated: "No, I'm not going to put anyone in a situation to compromise their safety."  After the misunderstanding between Sergeant Townsend and Plaintiff was cleared up and Plaintiff said he was fine sharing a cell with Kalama, Sergeant Townsend specifically asked Plaintiff if sharing a cell with Kalama was "good" and Plaintiff responded "ya."  In addition, as noted, the record reflects Plaintiff and Kalama had been living in A-Pod for two months before the incident, and they had never had any prior

verbal or physical altercations nor were there any written reports, complaints, or grievances filed by Plaintiff or Kalama regarding animosity or issues between them. Furthermore, the record does not contain any indication that Kalama had a history of aggression towards people.

On this record the Court concludes Plaintiff has not established a genuine dispute of material fact exists as to whether Sergeant Townsend intended to cause Plaintiff emotional distress or that Sergeant Townsend knew with substantial certainty that her conduct would cause Plaintiff emotional distress. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to that portion of Plaintiff's intentional infliction-of-emotional-distress claim premised on Sergeant Townsend's decision to have Kalama share a cell with Plaintiff.

**2. Release Decision**

Plaintiff also bases his claim for intentional infliction of emotional distress in part on Sergeant Townsend's decision to release Plaintiff on September 6, 2019, without providing him with adequate medical care. Defendants, however, assert Plaintiff fails to establish Sergeant Townsend's conduct caused Plaintiff emotional distress. Specifically, Defendants note the record does not contain any evidence that Plaintiff was distressed by his release. In fact, Plaintiff testified at deposition that he did not "complain about being released" and

was "happy to be released." Nweze Decl., Ex. 4, at 53. In
addition, when Plaintiff was seen by medical staff at OHSU, they
noted he was not in any acute distress.

The Court, therefore, concludes on this record
that Plaintiff has not established any genuine dispute of
material fact exists as to whether he was emotionally distressed
by Sergeant Townsend's decision to release him on September 6,
2019. Accordingly, the Court grants Defendants' Motion for
Summary Judgment as to Plaintiff's claim for intentional
infliction of emotional distress.

**VII. Plaintiff's Negligence Claim**

In his negligence claim Plaintiff relies on the same facts
that underpin his claim for violation of the Eighth Amendment.
Plaintiff alleges: "At all times . . . Defendants were subject
to a duty of care to avoid causing unnecessary physical harm and
distress to persons in their custody. The wrongful conduct of
Defendants did not comply with the standard of care to be
exercised by reasonable persons, proximately causing Plaintiff to
suffer injuries and damages." Compl. at ¶ 27.

Defendants move for summary judgment on Plaintiff's
negligence claim on the grounds that judges in this district have
held negligence claims cannot be founded on the same facts as
constitutional claims or, in the alternative, Plaintiff fails to
produce evidence sufficient to establish a genuine dispute of

material fact exists as to his negligence claim.

## A. The Law

"[T]o succeed on a claim of negligence" in Oregon a plaintiff must

> "allege facts from which a factfinder could
> determine (1) that defendant's conduct caused a
> foreseeable risk of harm[;] (2) that the risk is
> to an interest of a kind that the law protects
> against negligent invasion[;] (3) that defendant's
> conduct was unreasonable in light of the risk[;]
> (4) that the conduct was a cause of plaintiff's
> harm[;] and (5) that plaintiff was within the
> class of persons[,] and plaintiff's injury was
> within the general type of potential incidents and
> injuries[,] that made defendant's conduct
> negligent."

*Hernandez v. Marion Cty.*, No. 3:15-CV-01070-AA, 2017 WL 6029605, at *9 (D. Or. Dec. 3, 2017)(quoting *Horton v. Or. Health & Sci. Univ.*, 277 Or. App. 821, 826 (2016)).

## B. Negligence Claim Based on Same Facts as Plaintiff's Eighth Amendment Claim

As noted, Defendants move for summary judgment on Plaintiff's negligence claim on the grounds that Plaintiff's negligence claim is based on the same set of facts as his Eighth Amendment Claim, and this Court has held negligence claims cannot be founded on the same facts as constitutional claims.

Numerous judges in this district, including this Court, have held a negligence claim cannot be based on the same set of facts as a constitutional claim. *See, e.g., Daley v. McKoy*, No. 3:17-cv-00718-BR, 2018 WL 2470984, at *6-*7 (D. Or. May 31,

2018); *Gregory v. City of Newberg*, No. 3:15-CV-00473-BR, 2015 WL
5577755, at *7-*8 (D. Or. Sept. 21, 2015); *Rodrigues v. Jackson
Cty.*, No. 1:13-CV-01589-CL, 2015 WL 404577, at *3-*4 (D. Or.
Jan. 29, 2015); *Frank v. Cascade Healthcare Cmty., Inc.*,
No. 6:11-cv-06402-AA, 2013 WL 867387, at *5 n.5 (D. Or. Mar. 6,
2013); *Woods v. Gutierrez*, No. 3:11-CV-01082-BR, 2012 WL 6203170,
at *12 (D. Or. Dec. 12, 2012); *Barringer v. Clackamas Cty.*,
No. CV 09-068-AC, 2010 WL 5349206, at *9 (D. Or. Nov. 22, 2010);
*Hadley v. City of Beaverton*, No. CV-09-022-ST, 2010 WL 1257609,
at *14 (D. Or. Feb. 16, 2010); *Whitfield v. Tri-Metro. Transp.
Dist.*, No. 06-1655-HA, 2009 WL 839484, at *11 (D. Or. Mar. 30,
2009).  As Magistrate Judge Paul Papak explained, however, in a
Findings and Recommendation adopted by this Court that even
though the "broad language from those cases seems to support
[the] argument that [a] negligence claim cannot be based on the
same set of facts as [any constitutional] claim[], . . . that
argument falls apart upon closer examination" of the case law.
*Johnson v. Tillamook Cty.*, No. 3:15-CV-00125-PK, 2016 WL
11383939, at *11 (D. Or. Apr. 18, 2016), *findings and
recommendation adopted*, 2016 WL 3946919 (D. Or. July 20, 2016).
Magistrate Judge Papak noted the "seminal case" on which the
above cases rely is *Shilo v. City of Portland*, No. 04-CV-130-AS,
2005 WL 3157563 (D. Or. Nov. 22, 2005), in which "the court
dismissed the plaintiff's negligence claim because it was based

on the same set of facts as her § 1983 claim for use of excessive force." *Johnson*, 2016 WL 11383939, at *10. The court in *Shilo* relied "on an Eleventh Circuit case, which in turn, relied on [a] Florida state-court decision holding that there is no cause of action for 'negligent' use of excessive force." *Johnson*, 2016 WL 11383939, at *10 (citing *Shilo*, 2005 WL 3157563, at *2); *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1263 (11th Cir. 2001); *City of Miami v. Sanders*, 672 So.2d 46, 47–48 (Fla. Dist. Ct. App. 1996)). Several of the above decisions "following *Shilo* [also] relied on Oregon cases holding that an intentional tort cannot form the basis of a negligence action." *Johnson*, 2016 WL 11383939, at *11 (citing *Woods*, 2012 WL 6203170, at *12-*13); *Barringer*, 2010 WL 5349206, at *9). Magistrate Judge Papak then distinguished the circumstances in *Johnson* from those in *Shilo* and the above cases:

> Unlike the § 1983 claims at issue in *Shilo* and its progeny, Johnson's § 1983 claim is based on deliberate indifference to medical needs, which requires a showing of only subjective recklessness — not intent. *See Farmer [v. Brennan]*, 511 U.S. [825,] 835-36 [1994](contrasting deliberate indifference with the heightened mental state that a plaintiff must prove to succeed on an excessive force claim. (citations omitted)). . . . *Shilo* and its progeny are therefore inapposite.

*Johnson*, 2016 WL 11383939, at *11. Ultimately Magistrate Judge Papak concluded: "Because the *Shilo* line of cases is inapposite and Oregon law permits a plaintiff to proceed on alternative theories of negligence and recklessness, the County is not

44 - OPINION AND ORDER

entitled to summary judgment on" the plaintiff's negligence claim. As noted, this Court adopted Magistrate Judge Papak's Findings and Recommendation in *Johnson*.

As in *Johnson*, Plaintiff's Eighth Amendment claim here is based on deliberate indifference, which, as noted, requires a showing of only subjective recklessness rather than intent. *Compare Hudson v. McMillan*, 503 U.S. 1, 7 (1992)(To establish a claim for excessive force a plaintiff must establish "the force [was] applied not in a good-faith effort to maintain or restore discipline, but rather maliciously and sadistically to cause harm.") *with Farmer*, 511 U.S. at 837 (The mental state of deliberate indifference under an Eighth Amendment claim is equivalent to that of "reckless disregard," and to be liable a prison official must "know of and disregard an excessive risk to inmate health or safety."). The Court, therefore, concludes Defendants have not established they are entitled to summary judgment on Plaintiff's negligence claim solely on the ground that it is premised on the same facts as his Eighth Amendment claim.

C. **Merits**

Defendants also assert they are entitled to summary judgment on Plaintiff's negligence claim because Plaintiff has not established a genuine dispute of material fact exists as to whether Defendants either knew or should have known about the

risk to Plaintiff or that Defendants' conduct was the cause of harm to Plaintiff.

### 1. Failure to Protect from Kalama

Defendants assert Plaintiff has not established a genuine dispute of material fact exists as to whether Sergeant Townsend's decision for Kalama to share a cell with Plaintiff "caused a foreseeable risk of harm" or that Sergeant Townsend's decision "was unreasonable in light of the risk." As noted, the record does not contain any evidence that indicates Sergeant Townsend had any reason to believe Kalama sharing a cell with Plaintiff was likely to cause Plaintiff harm or that her decision was unreasonable. The Court, therefore, grants Defendants' Motion for Summary Judgment as to Plaintiff's negligence claim to the extent that it is based on Sergeant Townsend's decision for Kalama to share a cell with Plaintiff.

### 2. Decision to Release Plaintiff

Defendants assert "the record is silent as to any harm suffered by Plaintiff or caused by Defendants arising out of [Plaintiff's] release." Defs.' Reply at 22. Defendants assert the record does not reflect Plaintiff "would have received any different care, suffered any different pain, or had any different medical outcome had the jail kept him in custody or transported him to the hospital." *Id*. at 23.

Plaintiff asserts in his Response that Sergeant

Townsend's actions created the foreseeable risk that Plaintiff would not receive adequate medical care, which would prolong Plaintiff's pain and suffering.

As noted, the *Estelle* court makes clear that Defendants had a duty to provide adequate medical care to Plaintiff. The record reflects, however, that Plaintiff did not receive any diagnosis or treatment in the jail. Although the state of Plaintiff's injuries before he was seen at OHSU is not clear because the record does not contain any medical treatment notes or record of treatment at the jail, it is not disputed that Plaintiff was injured while in jail. As noted, when he was seen at OHSU several hours after he was hit by Kalama, Plaintiff reported pain "in his left jaw [that was] dull, constant, and moderate in severity." Decl. of Lauren Nweze, Ex. 5 at 6. Plaintiff rated his pain between two and three on a scale of one to ten (with ten being the most severe). Plaintiff also had a left "mandibular rami fracture that was minimally displaced." Nweze Decl., Ex. 5 at 8. Plaintiff was also placed on a liquid diet.

On this record the Court concludes Plaintiff has established a genuine dispute of material fact exists as to whether Sergeant Townsend's conduct caused a foreseeable risk of harm that Plaintiff would suffer prolonged pain because he was released to find his own transportation to the hospital, which

took several hours rather than being treated at the jail or being transported to the hospital.  Accordingly, the Court denies Defendants' Motion for Summary Judgment as to that portion of Plaintiff's negligence claim that is based on Sergeant Townsend's decision to release Plaintiff.

**VIII. Punitive Damages**

Defendants seek summary judgment as to Plaintiff's claim for punitive damages on the ground that Plaintiff has not established a genuine issue of material fact exists as to Sergeant Townsend's motive when she decided to have Kalama share a cell with Plaintiff and/or to release Plaintiff on September 6, 2019.

"A jury may assess punitive damages in an action under § 1983 . . . when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Thomas v. City of Portland*, No. 05-CV-1059-ST, 2007 WL 2286254, at *17-*18 (D. Or. Aug. 3, 2007)(citing *Smith v. Wade*, 461 U.S. 30, 47-48 (1983)).  The Ninth Circuit, however, has made clear that "a defendant's misuse of authority or power or exploitation of a plaintiff's weakness is qualitatively different than a defendant's act that is malicious or in reckless disregard of the plaintiff's rights."  *Dang v. Cross*, 422 F.3d 800, 809-10 (9th Cir. 2005).  Thus, "[n]ot every intentional violation of a plaintiff's constitutional rights subjects a defendant to

punitive damages. A plaintiff must 'make a showing beyond the threshold level of intent required for compensatory liability.'" *Thomas*, 2007 WL 2286254, at *18 (quoting *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir. 1998)). "This requires proof that the defendant 'almost certainly knew that what he was doing was wrongful and subject to punishment.'" *Thomas*, 2007 WL 2286254, at *18 (quoting *Ngo*, 140 F.3d at 1304).

### A. Failure to Protect

The Court has already concluded Plaintiff has not established a genuine dispute of material fact exists as to that portion of his Eighth Amendment claim related to Sergeant Townsend's alleged failure to protect him from Kalama. The Court, therefore, also concludes Plaintiff has not established a genuine dispute of material fact exists as to that portion of Plaintiff's punitive-damages claim relating to Sergeant Townsend's alleged failure to protect Plaintiff from Kalama.

Accordingly, the Court grants Defendants' Motion to Dismiss as to that portion of Plaintiff's punitive-damages claim relating to Sergeant Townsend's alleged failure to protect Plaintiff from Kalama.

### B. Release Decision

The Court already has concluded Plaintiff has alleged sufficient facts to establish a genuine dispute of material fact exists as to why Sergeant Townsend released Plaintiff. In

addition, the Court notes Sergeant Townsend testified at deposition that she was aware Plaintiff was injured; that she did not know or consider the time that the nearest emergency room in St. Helens closed[3] when she released Plaintiff; and that she did not know or consider the fact that the next closest emergency room to the Columbia County Jail was located more than 25 miles away in Portland, Oregon.

On this record the Court concludes Plaintiff has established a genuine dispute of material fact exists as to whether Sergeant Townsend acted in reckless disregard of Plaintiff's right to adequate medical care when she released him on September 6, 2019. Accordingly, the Court denies Defendants' Motion for Summary Judgment as to that portion of Plaintiff's punitive-damages claim related to Plaintiff's early release.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion (#46) for Summary Judgment as follows:

1.  **GRANTS** Defendants' Motion as to Plaintiff's claim under the Fourteenth Amendment;

2.  **GRANTS** Defendants' Motion as to that portion of Plaintiff's claim under the Eighth Amendment related to

---

[3] The record reflects the emergency room in St. Helens closes at 8:30 p.m.

Sergeant Townsend's decision for Kalama to share a cell with Plaintiff;

3.  **DENIES** Defendants' Motion as to that portion of Plaintiff's claim under the Eighth Amendment related to Sergeant Townsend's decision to release Plaintiff;

4.  **DENIES** Defendants' Motion as to the issue of qualified immunity for Sergeant Townsend's decision to release Plaintiff;

5.  **GRANTS** Defendants' Motion as to Plaintiff's *Monell* claim;

6.  **GRANTS** Defendants' Motion as to Plaintiff's claims for reckless and intentional infliction of emotional distress;

7.  **GRANTS** Defendants' Motion as to that portion of Plaintiff's negligence claim related to Sergeant Townsend's decision for Kalama to share a cell with Plaintiff and **DENIES** Defendants' Motion as to that portion of Plaintiff's negligence claim related to Sergeant Townsend's decision to release Plaintiff; and

8.  **GRANTS** Defendants' Motion as to that portion of Plaintiff's punitive-damages claim related to Sergeant Townsend's decision for Kalama to share a cell with Plaintiff and **DENIES** Defendants' Motion as to that portion of Plaintiff's punitive-damages claim related

to Sergeant Townsend's decision to release Plaintiff.

The Court **DIRECTS** the parties to submit no later than July 22, 2021, a joint proposed case-management plan for resolving the remaining issues in this matter.

IT IS SO ORDERED.

DATED this 8th day of July, 2021.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge